HENDRICKS COUNTY RURAL ELECTRIC MEMBERSHIP CORPORATION, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 78–2127.

United States Court of Appeals, Seventh Circuit.

Argued April 13, 1979.

Decided July 26, 1979.

26

Warren D. Krebs, Lebanon, for petitioner.

Richard Michael Fischl, NLRB, Washington, D. C., for respondent.

Before CUMMINGS, SPRECHER, Circuit Judges, and BONSAL, Senior District Judge.*

SPRECHER, Circuit Judge.

The employer, Hendricks County Rural Electric Membership Corporation (REMC), appeals from a decision of the National Labor Relations Board finding that REMC engaged in unfair labor practices in violation of section 8(a)(1) of the National Labor Relations Act. 29 U.S.C. § 158(a)(1). The principal issue presented by this appeal is whether the personal secretary to the general manager of REMC was an "employee" under section 2(3) of the Act. 29 U.S.C. § 152(3). We hold that the Board did not apply the appropriate legal standard for resolving this issue and remand for a factual application of the proper standard.

I

On May 9, 1977, the general manager of REMC, Wallace Dillon, discharged his per-

---

* The Honorable Dudley B. Bonsal, Senior District Judge of the Southern District of New York is sitting by designation.

sonal secretary, Mary Weatherman. The General Counsel charged that Weatherman was discharged for engaging in concerted activities protected by section 7 of the National Labor Relations Act. The administrative law judge conducted a hearing and determined that Weatherman was an "employee" within the coverage of the Act, that she had engaged in protected concerted activity and that Dillon discharged her for that activity. The judge ordered REMC to reinstate Weatherman with back pay.

The facts surrounding Weatherman's discharge were carefully established by the administrative law judge. Lloyd Hadley, a close friend of Weatherman, was injured in the course of employment in February 1976, resulting in the loss of an arm. In March 1977, Hadley sought reinstatement with REMC. The Board of Directors notified Hadley in April that he would not be reinstated.

The first week in May, a petition requesting reconsideration of the decision not to reinstate Hadley was mailed to members of the Board. The petition was signed by 26 employees. Mary Weatherman signed the petition; she was the sixth employee to do so. On Saturday, May 7, one of the directors called Dillon at home to advise him of the petition. Dillon drove to the director's home that day in order to see the petition.

At 10:00 a. m. on Monday, May 9, Dillon discharged Weatherman. At the hearing, Dillon testified that he discharged Weatherman for conduct unrelated to the Hadley petition. The administrative law judge conducted an extensive and careful evaluation of the evidence and concluded that Dillon's explanation of the discharge was "ludicrous."

■ We conclude, contrary to the argument of the employer, that the judge's decision that Mary Weatherman was discharged for signing the Hadley petition is fully supported by the evidence.[1] REMC argues ad-

ditionally that the circulation of the Hadley petition was not conduct protected by the Act and that Mary Weatherman was not an employee protected by the Act. Although we conclude that the judge correctly characterized Mary Weatherman's conduct as "protected," we find it necessary to remand the decision for a new determination of her "employee" status.

## II

REMC was guilty of an unfair labor practice in this case only if Mary Weatherman was discharged for engaging in "concerted activities for the purpose of . . . mutual aid or protection." Section 7, 29 U.S.C. § 157. The circulation of the petition among the employees was undoubtedly "concerted," but REMC disputes that it was circulated for the "purpose of mutual aid or protection."

■ The Board has only recently reiterated that circulation of a petition on behalf of a discharged employee is protected activity under section 7. *Youngstown Osteopathic Hospital Association*, 224 N.L.R.B. 574 (1976). Such activity is protected even if the discharge of the employee was lawful. *See, e. g., NLRB v. Pepsi-Cola Bottling Co.*, 449 F.2d 824, 830 n.5 (5th Cir. 1971).

■ Employee conduct should similarly be protected when the petition criticizes the employer's refusal to reinstate an injured employee. The administrative law judge specifically found the petition was motivated in part by the employees' desire to promote their own future well being should they be faced with a similar misfortune. Refusal to reinstate a former company employee seriously injured on the job is an issue about which the REMC employees "had a legitimate interest . . . in making known their views to management without being discharged for that interest." *NLRB v. Phoenix Mutual Life Ins. Co.*, 167 F.2d 983, 988 (7th Cir. 1948).[2]

---

**1.** The ALJ also found that REMC violated the Act by improperly interrogating another clerical employee about the petition. We find this conclusion is also supported by the evidence.

**2.** *Allied Chemical & Alkali Workers, Local No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971), strongly relied on by the employer, simply does not undermine

### III

■ Although the ALJ properly concluded that the circulation of the petition was protected activity, that protection can only extend to an individual who is an "employee" under the Act. Despite the breadth of the definition of "employee,"[3] the Supreme Court has established that certain categories of employees are impliedly excluded from that definition. *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974). REMC argues that individuals working in personnel departments or as confidential secretaries are impliedly excluded and that Weatherman fits in both categories.

In determining whether Mary Weatherman was a statutory "employee," the ALJ applied a well-established Board standard. The judge ruled that Mary Weatherman was only excluded from the Act if she "assist[ed] and act[ed] in a confidential capacity to persons who formulate, determine, and effectuate management policies in the field of labor relations." 236 N.L.R.B. No. 212 Appendix at 7, *quoting B. F. Goodrich Co.*, 115 N.L.R.B. 722, 724 (1956). Examining the evidence carefully, the judge determined that Weatherman "did not act 'in a confidential capacity' to Dillon in any meaningful sense with respect to [employer's] labor relations policies. . . ." *Id.* The ALJ also found that Weatherman was not working in a position equivalent to a personnel department employee, a finding

which we do not consider clearly erroneous. The judge therefore concluded that Weatherman was a statutory "employee."

We do not believe that the judge erred factually by finding that Weatherman did not assist in a confidential capacity with respect to labor relations policies. We do conclude, however, that the use of the *B. F. Goodrich* standard was an error of law.

This Court has previously held that "confidential" secretaries are excluded from the Act. *Peerless, Inc. v. NLRB*, 484 F.2d 1108 (7th Cir. 1973). *See also NLRB v. Wheeling Electric Co.*, 444 F.2d 783 (4th Cir. 1971). The *B. F. Goodrich* standard does represent current Board law on the question of whether a secretary should be considered an excluded "confidential secretary." *See Willett Motor Coach Co.*, 227 N.L.R.B. 882 (1977); *Minneapolis Star and Tribune Co.*, 222 N.L.R.B. 342, 343 (1976); *California Inspection Rating Bureau*, 215 N.L.R.B. 780, 783 (1974). Nonetheless, we believe that standard was exposed to serious question by the 1974 decision of the Supreme Court in *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974).

In *Bell Aerospace*, the Supreme Court confronted the issue of whether buyers in an employer's purchasing department were statutory employees or were excludable as managerial employees. The Board argued that even though the buyers were managerial, they were covered by the Act since their jobs were unrelated to the "formula-

---

this conclusion. In *Pittsburgh Plate Glass*, the Court refused to find that reduction of the retired employees' pensions was a mandatory subject of bargaining. Mandatory bargaining extends only to the " 'terms and conditions of employment' of the employer's 'employees' . . . ." 404 U.S. at 164, 92 S.Ct. at 390. The scope of activity protected under section 7 is obviously much broader, extending to concerted activity engaged in for the purposes of mutual aid and protection. Thus the fact that REMC may not have been under an obligation to bargain with the employees over Hadley's reinstatement in no way limits the employees' freedom to circulate a petition on his behalf.

**3.** The Act provides:
   The term "employee" shall include any employee, and shall not be limited to the employees of a particular employer, unless the

Act explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment, but shall not include any individual employed as an agricultural laborer, or in the domestic service of any family or person at his home, or any individual employed by his parent or spouse, or any individual having the status of an independent contractor, or any individual employed as a supervisor, or any individual employed by an employer subject to the Railway Labor Act, as amended from time to time, or by any other person who is not an employer as herein defined.
§ 2(3), 29 U.S.C. § 152(3).

tion and implementation of labor relations policies." 416 U.S. at 272, 94 S.Ct. at 1761. The Supreme Court disagreed, holding that all managerial employees were excluded from the Act without regard to any employment nexus to labor relations policies.

The Supreme Court was not presented with the issue of whether all secretaries acting in confidential capacity are also excluded from the Act without regard to labor relations nexus. Nor do we think that the policies favoring the exclusion of all managerial employees from the Act necessarily dictate the exclusion of all confidential secretaries as well. Nonetheless, the Supreme Court interpretation in *Bell Aerospace* of the 1947 amendment to the National Labor Relations Act and its legislative history requires the conclusion that all confidential secretaries are excluded.

In 1947, Congress passed the Taft-Hartley Act, amending the National Labor Relations Act to exclude "supervisors" from the Act.[4] The House bill, H.R. 3020, 80th Cong., 1st Sess. (1947), excluded, through its definition of supervisor, those employees "employed in labor relations, personnel, [or] employment . . . matters" as well as those "who by the nature of [their] duties is given by the employer information that is of a confidential nature, and that is not available to the public, to competitors, or to employees generally, for use in the interest of employer." 416 U.S. at 279–80 n.9, 94 S.Ct. at 1764–1765 n.9. The Senate Bill, on the other hand, did not enumerate these two categories of employees for exclusion.

Although the Senate version of the Bill was eventually enacted, the Conference Committee Report emphasized that "persons working in labor relations, personnel and employment departments" and "confidential secretaries" were considered excluded. A specific provision "was not thought necessary . . . since the Board has

treated, and presumably will continue to treat, such persons as outside the scope of the Act." H.R. Conf.Rep. No. 510, 80th Cong., 1st Sess., 35–36 (1947) U.S.Code Cong.Serv. p. 1135. Relying on this legislative history, the Supreme Court in *Bell Aerospace* concluded that confidential employees, including confidential secretaries, were persons "who both the House and the Senate believed were plainly outside the Act." 416 U.S. at 283, 94 S.Ct. at 1766.

Proceeding from the interpretation that confidential secretaries were excluded from the Act, the Court reasoned that managerial employees should also be impliedly excluded. The Court concluded: "The Court of Appeals in the instant case put the issue well: ' . . . Surely Congress could not have supposed that, while 'confidential secretaries' could not be organized, their bosses could be.'" *Id.* at 284, 94 S.Ct. at 1767, *quoting* 475 F.2d 485 at 491–92.

The Court thus clearly read the 1947 history as indicating a Congressional intention to exclude confidential secretaries. The Court's opinion and various segments of the legislative history further clarify that "confidential" status was not to be defined by reference to labor relations. The Court stated, "[t]he discussion of 'confidential employees' in both the House and Conference Committee Reports . . . unmistakably refers to that term as defined in the House bill, which was not limited just to those [employees] in 'labor relations.'" 416 U.S. at 284 n.12, 94 S.Ct. at 1766 n.12. The House Report, in no uncertain terms, expressed an intention that "confidential" status not be restricted by a labor nexus.

[P]rotecting confidential financial information from competitors and speculators, protecting secret processes and experiments from competitors, and protecting other vital secrets ought not to rest in the administrative discretion of the Board

---

4. The Act provides:

The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.
§ 2(11), 29 U.S.C. § 152(11).

. . . . The bill therefore excludes from the definition of employees persons holding positions of trust and confidence whose duties give them secret information.

H.R.Rep.No. 245, 80th Cong., 1st Sess., as cited in *NLRB v. North Arkansas Electric Cooperative, Inc.*, 446 F.2d 602, 606 (8th Cir. 1971).

The conference report, as excerpted above, states that no specific exception was necessary since the Board already excluded such individuals. In fact, the Board has historically excluded only those confidential secretaries working for individuals in the field of labor relations. *See, e. g., Consolidated Vultee Aircraft Corporation*, 54 N.L.R.B. 103, 113 (1943). Nonetheless, the Supreme Court found that although "Congress may have misconstrued . . . Board practice," it "clearly thought that the Act did not cover 'confidential employees' even under a broad definition of that term." 416 U.S. at 268 n.12, 94 S.Ct. at 1766 n.12.[5]

██ The legislative history of the Taft-Hartley Act, as interpreted in *Bell Aerospace*, requires the conclusion that *all* secretaries working in a confidential capacity, without regard to labor relations, be excluded from the Act. The administrative law judge in this case limited his factual inquiry to a determination that Weatherman had not acted in a confidential capacity with respect to labor relations. We therefore find it necessary to remand the case[6] for a determination of whether "by the nature of [her] duties" she was "given by the employer information that is of a confidential nature, and that is not available to the public, to competitors, or to employees generally, for use in the interest of the employer." H.R. 3020 § 2(12)(C), 80th Cong., 1st Sess. (1947). See also 416 U.S. at 284 n.12, 94 S.Ct. 1757. The determination of "confidential" status is of course a question appropriately committed to Board discretion. As the Supreme Court stated in *Bell Aero-*

space, "the specific job title of the employees involved is not in itself controlling. Rather, the question whether particular employees are 'managerial' [or confidential] must be answered in terms of the employees' actual job responsibilities, authority, and relationship to management." 416 U.S. at 290 n.19, 94 S.Ct. at 1769 n.19. The order is reversed and remanded for proceedings consistent with this opinion.

BONSAL, District Judge, dissenting.

I would affirm. The record satisfies me that Mary Weatherman was not a "confidential secretary" and was covered by the Act. The finding of the administrative judge that she was discharged for engaging in protected concerted activity, viz., the circulation of the petition asking reconsideration by the Board of Directors of its decision not to reinstate Hadley, was supported by substantial evidence.

---

**5.** See also note 10 of the Second Circuit opinion in *Bell*, 475 F.2d 485, 492.

**6.** As to the necessity for remand in a case such as this, see *Bell Aerospace*, 416 U.S. at 290, 94

S.Ct. 1757; *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 249, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972).