## HENDRICKS COUNTY RURAL ELECTRIC MEMBERSHIP CORPORATION, Petitioner,

v.

## NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 80–1283.

United States Court of Appeals, Seventh Circuit.

Argued June 3, 1980.

July 21, 1980.

Warren D. Krebs, Parr, Richey, Obremskey & Morton, Lebanon, Ind., for petitioner.

Richard Michael Fischl, N.L.R.B., Washington, D. C., for respondent.

Before SPRECHER and CUDAHY, Circuit Judges, and CAMPBELL, Senior District Judge.*

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

SPRECHER, Circuit Judge.

This review causes us to examine again the questions (1) what standard is to be applied to determine a confidential employee excluded under the National Labor Relations Act, 29 U.S.C. §§ 151 *et seq.*, and (2) whether the Board's finding that an employee was not a confidential employee is supported by substantial evidence on the record considered as a whole. See 29 U.S.C. § 160(e).

I

On July 17, 1978, the Board issued its order finding that the Company had violated section 8(a)(1) of the Act by discharging Mary M. Weatherman, the personal secretary to its general manager and chief executive officer, for signing a petition calling for the reinstatement of an injured employee, and by interrogating another employee regarding the petition. The Board ordered the Company to cease and desist from discharging or taking other adverse action against any employee for engaging in protected, concerted activity, and from coercively interrogating employees concerning such activity. The Board further ordered the Company to reinstate Weatherman to her former job, or a substantially equivalent position, with back pay. 236 N.L.R.B. 1616 (1978).

On July 26, 1979, this court enforced the Board's order concerning the 8(a)(1) interrogation. However, we reversed and remanded the portion of the order dealing with the discharge of Weatherman and ordered the Board to use the legal standard outlined in our opinion to determine whether she was a confidential employee and therefore not covered by the Act. 603 F.2d 25 (7th Cir. 1979).

On October 10, 1979, the Board advised the parties that it had "decided to accept the remand from the Court of Appeals . . . ., and all parties are hereby advised that they may file Statements of Position

with the Board. . . ." The Company in its statement indicated that it believed that the record already contained enough evidence to require the conclusion that Weatherman was not an employee ·under the standard established by this court. The Company added:

> However, if the Board believes that its prior conclusions and testimony hereinbelow does [*sic*] not mandate such a conclusion, the . . . [Company] believes that it is entitled to and that the Board should order a reopening of the proceedings to present further evidence regarding the issues on remand.

Record, Statement of Position of Hendricks County Rural Electric Membership Corporation, at 3.

Instead of taking further evidence, the Board reexamined the previous record and reaffirmed its prior conclusion that Weatherman was an employee under the Act. 247 N.L.R.B. No. 68 (1980).

The case is again before the court upon the Company's petition for review and the Board's cross-application for enforcement.

## II

In *National Labor Relations Board v. Bell Aerospace Co.*, 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974), the Supreme Court held that Congress intended to exclude from the protection of the National Labor Relations Act all employees properly classified as " 'managerial employees,' rather than just those in positions susceptible to conflicts of interest in labor relations." *Id.* at 274, 94 S.Ct. at 1261–62. To reach this holding, the Court first concluded that "confidential employees" were excluded from coverage under a "broad definition" not limited to those having a labor nexus. The Court said:

In 1946 in *Ford Motor Co.*, 66 N.L.R.B. 1317, 1322, the Board had narrowed its definition of "confidential employees" to embrace only those who exercised " 'managerial' functions in the field of labor relations." The discussion of "confidential employees" in both the House and Conference Committee Reports, however, unmistakably refers to that term as defined in the House bill, which was not limited just to those in "labor relations." Thus, although Congress may have misconstrued recent Board practice, it clearly thought that the Act did not cover "confidential employees" even under a broad definition of that term.

416 U.S. at 284 n. 12, 94 S.Ct. at 1766 n. 12.

Immediately following in the text, the Court quoted with complete approval the Court of Appeals statement in *Bell Aerospace* as follows:

> "Surely Congress could not have supposed that, 'while confidential secretaries' could not be organized, their bosses could be."

*Id.* at 284, 94 S.Ct. at 1767, quoting 475 F.2d 485, 491–92 (2d Cir. 1973).

■ Thus, although the *Bell Aerospace* holding applied to managerial employees, the statement in note 12 about confidential employees was not a mere dictum,[1] but was the basis, or at least part of the basis, upon which the holding itself was constructed. In *United States v. Bukowski*, 435 F.2d 1094, 1101 (7th Cir. 1970), we noted that a court of appeals could not depart, at its own choosing, from an analytical construct uniformly adhered to in decisions of the Supreme Court.

Although the Board has accepted our prior decision in this case, in at least one subsequent case pending on review before us, *Malleable Iron Range Co. v. N. L. R. B.*, No. 79–1991, the Board strongly urges that our prior decision be overruled,[2] either on

---

1. A dictum in a Supreme Court opinion may be brushed aside by the Supreme Court as dictum when the exact question is later presented, but it cannot be treated lightly by inferior federal courts until disavowed by the Supreme Court. See 1B Moore's Federal Practice ¶ 0.402, at p. 112 & n. 3.

2. However, this decision is the law of this circuit unless and until this court sitting in banc would determine otherwise or unless higher authority makes a contrary determination. *Powell v. United States*, 338 F.2d 556, 557 (7th Cir. 1964).

the basis that the Supreme Court was in error or misled as to the legislative history in footnote 12, or because of the Court's later opinion in *N. L. R. B. v. Yeshiva University*, 444 U.S. 672, 100 S.Ct. 856, 63 L.Ed.2d 115 (1980).

 Not only are decisions of the Supreme Court of the United States and their clear implications absolutely binding on inferior federal courts,[3] but this is especially true of matters of legislative history and congressional purpose, *In re Continental Investment Corp.*, 586 F.2d 241, 248 (1st Cir. 1978), and of standards to be applied by an administrative agency or lower court. *Patterson v. Brown*, 393 F.2d 733, 736 (10th Cir. 1968). While we seriously doubt that the Supreme Court could be misled by counsel, a court of appeals is not at liberty to go behind an opinion or its clear implications on the ground that the Supreme Court "was not fully apprised by counsel in that case as to the legislative history . . .." *United States v. Russell*, 461 F.2d 605, 608 (10th Cir. 1972).

We find nothing in the *Yeshiva* case which undermines or impliedly overrules anything said in *Bell Aerospace*, which is cited with approval throughout the opinion. Therefore, we adhere to everything we said in *Hendricks County Rural Electric Membership Corp. v. N. L. R. B.*, 603 F.2d 25 (7th Cir. 1979), despite the Board's opinion that it is erroneous insofar as it relies upon note 12 of *Bell Aerospace*. Any changes in the substance of note 12 must come from higher authority.

### III

In our prior opinion, we concluded that: The administrative law judge in this case limited his factual inquiry to a determination that Weatherman had not acted in a confidential capacity with respect to labor relations. We therefore find it nec-

---

**3.** The judicial Power of the United States, shall be vested in one Supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish.

U.S.Const., Art. III, § 1.

essary to remand the case for a determination [under the proper standard] . . ..

603 F.2d at 30 [footnote omitted].

The administrative law judge in his original opinion made it clear that the only standard he applied and the only one that the record evidence supported was the labor nexus standard:

The record shows that Weatherman did not act "in a confidential capacity" to Dillon [the general manager] in any meaningful sense with respect to . . [the Company's] labor relations policies

. . . .

\* \* \* \* \* \*

Weatherman's "duties do not involve her in a confidential capacity with his responsibilities" with respect to labor policies. Accordingly, I conclude that Weatherman was not a confidential employee as the Board defines that term.

236 N.L.R.B. at 1619, 1620.

The record context in which the above statements were made by the administrative law judge was as follows. Early in the proceedings, the Company filed a written motion to dismiss on the ground that Weatherman was a confidential employee excluded under the Act. In an order dated July 22, 1977, an administrative law judge other than the one who eventually heard the evidence ruled that the motion would be reserved for the judge who would conduct the hearing. When the hearing began before the second judge, he noted the pendency of the motion· and reserved his ruling. Near the beginning of the general manager's testimony intended to establish the confidential nature of Weatherman's job, the administrative law judge admonished the general manager to "stick to personnel files" and "to files pertaining to the employees." Transcript, Vol. II, at 101. A reading of the administrative record makes it obvious that the admonitions were observed inasmuch as there is clearly a conscious effort by all participants to restrict

the evidence to that which pertains to labor or personnel matters.

■ If we had believed that the prior record was sufficient to support a finding under the *Bell Aerospace* standard, we would not have remanded the proceeding to the Board. Upon remand, the Board asked for statements of position, and the Company's position was that the proceedings should be reopened to present further evidence. When an erroneous standard for the admission of evidence is used, it follows almost mandatorily that a new record is needed, not only to add evidence in patchwork fashion but also possibly to rehear all the relevant evidence under the different admission standard.

■ The Board did not reopen the proceedings under the different standard, did not take any additional evidence, did not remand the proceedings to the administrative law judge who heard the original evidence, and has sent us the same record we reviewed before. We are asked to enforce an order which purports to apply the new standard to the old record but actually reapplies the old standard incorporating the labor nexus.[4]

The new broad standard was found to apply to the old record on the basis of "Dillon's statement that the . . . [Company] simply did not have secret papers or documents." Memo. op. at 5. Dillon's statement was that the Company had "nothing to hide from the *members*," Transcript, Vol. II, at 115 [emphasis supplied], and was supposedly supported by the Board's gratuitous conclusion that the Company "is a cooperative, and that all members *presumably* have access to [its] documents . . . ." Memo. op. at 4 n. 8 [emphasis supplied]. That a company has no secrets from its members does not mean that it does not have matters or documents which are confidential insofar as its nonconfidential employees are concerned, inso-

far as its competitors are concerned, insofar as regulatory agencies are concerned, and insofar as the public is concerned.

The petition to review is granted, and the application to enforce the order is denied.

ENFORCEMENT DENIED.

CUDAHY, Circuit Judge, dissenting.

Unfortunately, the majority analysis here leads to a quite unjustifiable outcome. The result is that Mary Weatherman, personal secretary to the general manager of a rural electric membership corporation, has been lawfully fired for signing a petition asking for the reinstatement in his job of a friend and fellow worker who lost his arm in the course of his employment. Whatever may be our discomfiture at the Board's maneuvers on remand, only the gravest of reasons should lead us to sanction such a lamentable injustice.

While it might have been more politic for the Board to have reopened the hearing, the Company argues only one specific fact which it would have tried to establish during such a reopening: the Company's "involve[ment]" in "three (3) litigation cases" (presumably with a competitive investor-owned utility). There is slight likelihood that this "new fact" would materially change the basis for evaluating Weatherman's status as a "confidential secretary." The fact is that Weatherman's status was well explored and ventilated at the original hearing, and both we and the Board should be able to reach the requisite conclusions based on that record.

*Hendricks County Rural Electric Membership Corp. v. N. L. R. B.*, 603 F.2d 25 (7th Cir. 1979) ("*Hendricks I*") does indeed hold that a confidential *secretary* is excluded from the protection of the Labor Act (whether or not the confidences are labor relations-related). *Hendricks I* is, for better or for worse, the present law of this

---

4. The order is larded with labor nexus language: (1) "[A]mong the mail she did not see was that regarding union relations"; (2) "this correspondence apparently did not relate to labor relations for personnel matters"; (3) "[W]hile these meetings [of the Board of Directors] apparently occasionally involved personnel matters"; (4) "Weatherman did not type internal memoranda regarding labor relations or personnel or employment matters."

Circuit.[1] But there is abundant evidence in the record to support the Board's conclusion that Weatherman is not properly classified as a confidential secretary.

The Company's strongest (or at least most fully developed) argument to the contrary seems to be that Weatherman was responsible for processing employees' medical and disability insurance claims—admittedly confidential. But these were the confidences of *employees* she had to keep. It is simply ludicrous that one should be classified as part of "management" and lose the protections conferred on "labor" because one is entrusted with the confidences of one's fellow workers.

On a broader issue, the majority seems to assert that *Hendricks I* holds that "confidential *employees*" (not limited to secretaries and, of course, not limited by the labor relations' nexus) are unprotected under the Act. With the most profound deference, I find the holding of *Hendricks I* to be more narrowly directed specifically to *secretaries*. That case teaches that:

> The legislative history of the Taft-Hartley Act, as interpreted in *Bell Aerospace,* requires the conclusion that *all* secretaries working in a confidential capacity, without regard to labor relations, be excluded from the Act. 603 F.2d at 30.

This conclusion of our Court may be consonant with the dicta of *Bell Aerospace,*[2] which found, quoting the Second Circuit

that, "surely Congress could not have supposed that, while 'confidential secretaries' could not be organized, their bosses could be." 416 U.S. at 284, 94 S.Ct. at 1767 (quoting 475 F.2d at 491–92). If there is anything relating to confidential *employees* "upon which the holding [in *Bell Aerospace*] itself was constructed" (as the majority here perceives the issue), it is most evidently the relationship of confidential *secretaries* to their "managerial" bosses.

Everything else—beyond confidential secretaries—that relates to "confidential employees" is at the farther reaches of dictum, both in *Bell Aerospace* and in *Hendricks I.* Nothing about confidential employees generally is found in the holding in either case, nor is the status of such employees generally, a part of the essential framework from which the respective holdings emerge.

The majority admonishes us of the need for deference to the dicta of the Supreme Court. I have no quarrel with this as far as it goes, but the fact remains that the broad dicta in footnote 12 of *Bell Aerospace* about "confidential employees" are ambiguous[3] and essential to nothing. There are dicta and there are dicta, and the rule of *stare decisis* must give them effect appropriate to the circumstances under which they appear.[4] To build a whole new body of law about "confidential employees" uninvolved in labor relations, on the footnote dicta of *Bell Aerospace*—all in the name of defer-

---

1. *But see Union Oil Company of California v. N. L. R. B.,* 607 F.2d 852 (9th Cir. 1979), which reaffirmed the traditional Board standard under *The B. F. Goodrich Co.,* 115 N.L.R.B. 722, 724 (1956), that the employee, to be excluded, must assist in a confidential capacity *with respect to labor relations. Accord, N. L. R. B. v. Allied Products Co., Richard Bros. Div.,* 548 F.2d 644 (6th Cir. 1977).

2. *N. L. R. B. v. Bell Aerospace Co.,* 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974).

3. Thus footnote 12 contains the following quotation from a House Report: *"Most of the people who would qualify as 'confidential' employees are executives and are excluded from the act in any event.*

The Board, itself, normally excludes from bargaining units confidential clerks and secretaries to such people as these."

Does this suggest that lower-level employees, not clerks or secretaries to executives, are rarely to be excluded?

4. The Supreme Court long ago stated:

> It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated. *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 399–400, 5 L.Ed. 257 (1821).

ence to the Supreme Court—is quite simply totally unwarranted.[5] To paint with a broad brush about the purported exclusion of "confidential employees" (other than those having the well-accepted "labor nexus") from the protection of the Act may be to strike a major blow at white collar unionism. Many, *if not most*, white collar workers are involved in something which may be argued to be "confidential" in some general sense. There are matters of credit, of costs, of designs, of customer lists, of prices, of medical records—the list is endless.[6] I do not perceive at all that the dicta of *Bell Aerospace* point down this road. Nor does *Hendricks I* require such a journey.

With the utmost respect, I dissent.

5. In *Hendricks I* this court said in commenting on *Bell Aerospace*, "Nor do we think that the policies favoring the exclusion of all managerial employees from the Act necessarily dictate the exclusion of all confidential secretaries as well." 603 F.2d at 29.

6. "Because most employees have an arguably confidential relationship with management, and because an expansive application of the exclusionary rule would deprive many employees of the right to bargain collectively, the Board has narrowly construed the definition of confidential employee." *Union Oil Company of California v. N. L. R. B., supra*, n. 1 at 853.