**BARRINGTON SCHOOL COMMITTEE**

v.

**RHODE ISLAND STATE LABOR
RELATIONS BOARD et al.**

No. 90–478–M.P.

Supreme Court of Rhode Island.

May 8, 1992.

Douglas Giron, Hinckley, Allen, Snyder & Comen, Providence, for plaintiff.

Thomas S. Hogan, Hogan & Hogan, East Providence, Thomas Ligouri, Jr., Westerly, Anthony Cofone, Cranston, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes to us on a petition for certiorari to review a judgment of the Su-

perior Court reversing a decision of the Rhode Island State Labor Relations Board. We affirm. The facts and travel of the case are as follows.

In early 1988, the Barrington Clerks/Aides/Bus Drivers NEARI/NEA (hereafter union or petitioner), a labor organization, filed a petition with the Rhode Island State Labor Relations Board (hereafter labor board, board, or petitioner) asking that a representation election be held to determine the propriety of certifying the union as the exclusive collective bargaining agent for the clerks, aides, bus drivers, and secretaries employed by the Barrington School Committee (hereafter school committee or respondent). At that time the school committee objected to the inclusion of the positions of secretary to the superintendent of schools and secretary to the business manager of the school committee within the proposed bargaining unit. The school committee contended that the duties of the individuals holding these positions are of a confidential nature and that their participation in collective bargaining would compromise the ability of respondent to develop and to effectuate management policies.

After a formal hearing in April of 1988 to ascertain whether a representation controversy in fact existed, the board decided to conduct an election for the benefit of those employees considered to be within the appropriate bargaining unit. At that hearing the school committee persisted in its objection to the inclusion of the two secretarial positions within the bargaining unit. In support of its position, the school committee cited the prior acceptance by the board of the "labor-nexus" test developed by the National Labor Relations Board (NLRB) to resolve the question of whether a particular employee has enough access to sensitive labor relations information to preclude that employee from engaging in collective bargaining. The board did not pass upon the eligibility of the two secretaries for membership in the bargaining unit before the representation election held on June 3, 1988. At the conclusion of the voting the union was selected as the bargaining agent for the clerks, aides, bus drivers, and secretaries comprising the Barrington bargaining unit. The board thereafter issued a certificate of representation to the union.

Subsequent to the election the board conducted hearings on September 22 and November 2, 1988, concerning whether the two secretaries might properly belong to the bargaining unit in light of their job responsibilities. On December 28, 1988, the board found the position of secretary to the superintendent of schools to be a confidential one and therefore would be excluded from the bargaining unit in accordance with the labor-nexus test. The board held, however, that the secretary to the business manager of the school committee is not a confidential employee and should be included in the unit. A certification order with these conclusions was issued accordingly. Soon afterward on January 2, 1989, the union and the school committee finalized the terms of a collective bargaining agreement.

On January 24, 1989, the school committee filed a timely appeal in the Superior Court under the provisions of the Rhode Island State Administrative Procedures Act (APA), G.L.1956 (1988 Reenactment) § 42–35–15, seeking to overturn the board's finding in regard to the business manager's secretary. After examining the record below, the Superior Court reversed the board and held that the position of secretary to the business manager should be excluded from the bargaining unit. Judgment in favor of the school committee was entered on September 19, 1990. On October 5, 1990, the union and the board petitioned this court for a writ of certiorari to consider whether the Superior Court is properly afforded jurisdiction under the APA to review a certification order of the labor board directly. In the event that the Superior Court did have such jurisdiction, petitioners then asked this court in the alternative to ascertain if the Superior Court substituted its judgment for that of the labor board outside the scope of its power of review. A writ of certiorari was issued on January 10, 1991. We shall consider the issues raised by the petition for certiorari in the order in which they appear in petitioners'

brief. Additional facts will be provided in the opinion as needed.

## I

## THE APPROPRIATENESS OF DIRECT REVIEW OF CERTIFICATION ORDERS

■ The petitioners argue that the Superior Court in the instant case lacked jurisdiction to review and to overturn the labor board's order allowing the secretary to the business manager to participate in collective bargaining. They contend that decisions emanating from the board as part of the process of resolving a representation controversy may not be appealed directly to the Superior Court pursuant to the APA's provisions for judicial review. We disagree and conclude that orders and other rulings related to employee-representation matters (certification orders) are capable of being perfected for direct and immediate review in the Superior Court under the terms of the APA.

There is no question that prior to the passage of the APA, certification orders could not be reviewed directly by the Superior Court under the appeal provisions contained in the Rhode Island State Labor Relations Act (Labor Relations Act). Only decisions finding or dismissing an unfair labor practice were considered to be final and subject to judicial review under the terms of the legislation. *See Local 494 Mutuel Race Track Employees v. Kelley,* 89 R.I. 128, 151 A.2d 374 (1959); *McGee v. Local No. 682, Brotherhood of Painters,* 70 R.I. 200, 38 A.2d 303 (1944). Consequently, in order to challenge a certification order, an aggrieved party had first to refuse to bargain and then to include its

opposition to the order as part of a subsequent unfair labor practice appeal.[1] The petitioners maintain that this framework for securing judicial review of a certification order was not supplanted by the enactment of the APA and is still in force. We are persuaded, however, that the adoption of the APA by the General Assembly altered significantly the route by which an appeal of a certification order may be properly taken.

The General Assembly enacted the APA in 1962 to establish a single and exclusive method of obtaining judicial review of agency action, excluding only the decisions of specifically exempt agencies. *Colonial Hilton Inns of New England, Inc. v. Rego,* 109 R.I. 259, 284 A.2d 69 (1971); *Yellow Cab Co. v. Public Utility Hearing Board,* 101 R.I. 296, 222 A.2d 361 (1966). The purpose of the APA is "to provide a uniform and consistent approach to the problems created by the increasing number and expanding jurisdiction of state administrative agencies." *New England Telephone & Telegraph Co. v. Fascio,* 105 R.I. 711, 715, 254 A.2d 758, 761 (1969). In furtherance of this end the General Assembly repealed all parts of acts inconsistent with the procedural scheme set out in the APA. *See* G.L.1956 (1988 Reenactment) § 42–35–18. It is well settled that the provisions of the Labor Relations Act have not been excluded from the scope of the APA's coverage. *Rhode Island State Labor Relations Bd. v. Valley Falls Fire District,* 505 A.2d 1170, 1172 (R.I.1986). Accordingly we must determine presently the extent to which the APA's approach to judicial review conflicts with and therefore supersedes the procedures for review contained in the Labor Relations Act.[2]

---

**1.** This procedure mirrors the federal practice under the National Labor Relations Act of 1935. 29 U.S.C.A. §§ 151 through 169. *See American Federation of Labor v. National Labor Relations Board,* 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940).

**2.** The employees in the case at bar are municipal employees. As such, their statutory right to bargain collectively is not derived from the Rhode Island Labor Relations Act, G.L.1956 (1986 Reenactment) chapter 7 of title 28, but is instead provided under G.L.1956 (1986 Reen-

actment) chapter 9.4 of title 28 ("Arbitration of Municipal Employees' (Except Policemen, Fire Fighters and Certified School Teachers) Disputes"). *See* § 28–9.4–3. Controversies related to municipal employee representation are handled by the labor board under the procedures contained in the Rhode Island Labor Relations Act when they do not conflict with the specific provisions of chapter 9.4 of title 28. *See* § 28–9.4–7. These procedures are applicable to adjudicatory proceedings and to any subsequent appeals to the extent that the Rhode Island Labor

Under the APA, direct and immediate judicial review in the Superior Court is available to any party "who has exhausted all administrative remedies available to him within the agency, and who is aggrieved by a final order in a contested case * * *. Any preliminary, procedural, or intermediate agency act or ruling is immediately reviewable in any case in which review of the final agency order would not provide an adequate remedy." Section 42–35–15(a). We examine these elements of an appealable order under the APA in relation to the case at bar.

■ An agency ruling is only appealable under the APA if it was made as part of a "contested case." The term "contested case" is defined pursuant to § 42–35–1(c) as "a proceeding, including but not restricted to ratemaking, price fixing, and licensing, in which the legal rights, duties, or privileges of a specific party are required by law to be determined by an agency after an opportunity for hearing." There is little doubt that controversies concerning the representation of employees must be considered "contested cases" in light of the labor board's procedures for handling these matters.

■ Whenever a question related to employee representation arises, the board is directed by the terms of the Labor Relations Act to provide for a hearing as part of its investigation of whether a bona fide representation controversy exists. If such a controversy is manifest the board is authorized to hold a representation election either before or after the aforesaid hearing. Additional proceedings may also be conducted by the board as part of its resolution of the controversy. The legal interests or duties of at least one party are plainly fixed by the order entered by the board at the conclusion of its representation-related proceedings. *See* G.L.1956 (1986 Reenactment) § 28–7–16 and § 42–35–9. Unfair labor practice charges are also resolved by the board after an appropriate hearing is held. *See* § 28–7–21,

§ 28–7–22 and § 42–35–9. We conclude accordingly that any controversy in which the legal interests or duties of a party are determined following proceedings held pursuant to the Labor Relations Act is in the nature of a "contested case" for the purposes of the APA. The instant case is clearly such a dispute. As such, it is the sort of controversy for which direct judicial review of the board's ruling may be available under the APA. The school committee was therefore not constrained to challenge the certification order concerning the business manager's secretary as part of a subsequent unfair labor practice appeal as was the case under the pre-APA practice.

■ Having determined that the certification order in the case at bar emanated from a "contested case" and was therefore susceptible of direct judicial review, we must next consider whether the order was ripe for immediate appeal. One of the prerequisites for ripeness under the APA is that all administrative remedies within the agency must normally have been exhausted. *See* § 42–35–15(a). The need for exhaustion to attain ripeness allows an agency to correct its own errors, perhaps thereby avoiding the necessity of any judicial involvement. *See* Schwartz, *Administrative Law*, § 8.33 (3d ed. 1991). The petitioners argue in line with the pre-APA practice that a party aggrieved by a certification order may only secure judicial review by first refusing to bargain and then contesting the propriety of the order as part of a subsequent unfair labor practice appeal. The petitioners contend that only then have the party's administrative remedies been exhausted. We disagree.

■ It is evident that once a certification order has been entered, the party affected adversely can obtain no additional level of review within the ambit of the board. There is no further opportunity for the party to vindicate its rights in the administrative process itself. *See id.* An unfair labor practice proceeding cannot provide an administrative remedy for the

Relations Act is not supplanted by the enactment of the Rhode Island Administrative Procedures Act.

simple reason that relief from the board's certification ruling is not available in such a hearing. Indeed, as a result of an unfair labor practice proceeding the aggrieved party may be subjected to further untoward consequences arising out of the initial order. Accordingly we are convinced that in the instant case the school committee exhausted its administrative remedies consistent with the APA's appeal provisions.

The other component of the APA's ripeness test is that any adverse effects flowing from the agency's determination must have been felt concretely by the party seeking judicial review. In order to meet this requirement, the act or ruling for which review is sought must either be a final order or be a preliminary, a procedural, or an intermediate agency action wherein relief from the final order would not provide an adequate remedy for injuries caused by the interlocutory action. *See* § 42–35–15(a). It is apparent that an order of the board certifying the results of a representation election is a final order and may be appealed to the Superior Court at once because it settles any responsibilities that labor and management might have to bargain collectively. *The consequences of such a disposition are substantial and tangible.* However, it is less certain whether other rulings handed down in the course of representation-related litigation before the board, including the order at issue presently, are also appealable without delay.

■ We conclude that to be appealable immediately an order or ruling of the labor board related to the process of resolving a representation controversy must not be capable of being mooted by the outcome of a subsequent representation election. *See Owner–Operators Independent Drivers*

*Association v. State,* 541 A.2d 69, 72–73 (R.I.1988). In the course of a representation controversy the board is required typically to make a number of determinations, some of which may warrant a separate hearing and agency order. These determinations include resolution of the following matters: whether the board has jurisdiction, whether the required minimum number of employees has signed an election petition, whether there is a contract bar or other technical bar to an election, the composition of the bargaining unit, the eligibility of particular employees to vote in the election, the scheduling of an election or elections, whether an election-related unfair labor practice requires an election to be delayed, and the certification of election results. If a party could obtain review of some or all these determinations sequentially, it would then be able to disrupt the board's orderly disposition of the controversy. Such interference with the workings of the board is preventable by forestalling any appeals of the board's actions that may prove to be unnecessary. Depending on the results of a representation election, all prior objections of an aggrieved party to the process of resolving a representation controversy may become moot.[3] Consequently consideration of these objections before the election is held or before it is determined that an election is not to be held is premature and potentially a waste of agency and judicial resources.[4] It is at such time that any injuries caused by the board's earlier determinations are felt in full and assessment of whether the board's final order provides an adequate remedy may be undertaken. *See* § 42–35–15(a). A party preserves its right to appeal any pertinent decision of the board still adverse at that point by having objected on the record of the earlier proceeding for which review is sought.

---

**3.** An unfair labor practice decision rendered during the process of resolving a representation controversy is not mooted by a subsequent election because any penalty accompanying the ruling is *not satisfied by the outcome of the election. See* G.L.1956 (1986 Reenactment) § 28–7–22(b). It must therefore be considered to be a final order for which judicial review is available immediately. The labor board may decide ‧ whether the unfair labor practice is of sufficient

gravity to delay any representation election to be held. *See* § 28–7–17.

**4.** If a competing union which seeks to intervene in a representation election is denied access to the ballot by an order of the labor board, such a decision is appealable immediately as a final order.

Turning to the case at bar, we observe that the board's order regarding the secretary to the business manager must be considered ripe for appeal under the APA's appeal provisions. There was no opportunity to moot the order through a subsequent representation election because the ruling was in the nature of a post-election challenge. All available administrative remedies had been exhausted. It was therefore the sort of agency action that was reviewable immediately pursuant to § 42–35–15. Consequently the Superior Court did not lack jurisdiction to review and to overturn the decision of the labor board including the position of secretary to the business manager within the bargaining unit.

After assessing the extent of the APA's application in the case at bar, we have concluded that the pre-APA method for securing review of a certification order described in *Local 494, Mutuel Race Track Employees v. Kelley*, 89 R.I. 128, 151 A.2d 374 (1959), is no longer applicable in light of the APA's enactment. Direct and immediate judicial review is available for certification orders that have been perfected for appeal under the terms of the APA. However, all elements of the Labor Relations Act's procedures not inconsistent with the appeal provisions of the APA remain in force. *Rhode Island State Labor Relations Bd. v. Valley Falls Fire District*, 505 A.2d 1170, 1172 (R.I.1986). The Superior Court is therefore obligated to hear appeals filed pursuant to § 42–35–15 "with the greatest possible expedition, and [they] shall take precedence over all other matters except matters of the same character." Section 28–7–32. *See also Warren Education Association v. Lapan*, 103 R.I. 163, 235 A.2d 866 (1967). During the appeal process, the order under scrutiny is not normally to be stayed even if doing so would work a significant hardship upon the

aggrieved party. *See* § 28–7–30 and § 42–35–15(c). Such action is to give deference to the board's decision while affording the party affected adversely by the board's conclusions the opportunity for review. As a consequence, if an order is not in fact stayed while an appeal is pending, a failure to follow its directives may lead to the filing of an unfair labor practice charge against a party not in compliance with the ruling. The board, if it so desires, is authorized to seek judicial enforcement of both its certification order and any subsequent unfair labor practice finding that flows out of a failure to abide by its prior decree.[5] Sections 28–7–26 and 28–7–27. Requests for judicial enforcement are to be taken up by the Superior Court on an accelerated basis. Section 28–7–32.

In the interests of judicial economy and of achieving a speedy and final resolution of employee-representation matters, we are persuaded that all complaints or petitions filed in the Superior Court that are related to a particular representation controversy are to be consolidated at the time that the first such complaint or petition is heard by the court. The entire record of the various proceedings below is to be presented to the Superior Court at that time. *See* § 28–7–26 and § 42–35–15. At such a consolidated hearing the court is to decide on the merits all of the questions presented in the pertinent complaints or petitions. *See* §§ 28–7–26, 28–7–27, and 42–35–15. These determinations shall have a preclusive effect on any similar or substantially related issues that may arise later. We are convinced that these procedures foster collective bargaining in a manner that is equitable, expeditious, and efficient and therefore in accordance with the objectives of the Labor Relations Act. *See* § 28–7–2.

---

5. The provisions of § 28–7–26 extend to all final orders of the labor board. *Barrington School Comm. v. Rhode Island State Labor Relations Bd.*, 120 R.I. 470, 388 A.2d 1369 (1978); *Warren Education Association v. Lapan*, 103 R.I. 163, 235 A.2d 866 (1967). In light of the changes in the notion of finality under the Labor Relations

Act worked by the passage of the Rhode Island Administrative Procedures Act, judicial enforcement may be sought for any final order related to the process of resolving a representation controversy—not just for unfair labor practice decisions as indicated expressly in the statute.

## II
## THE WAIVER OF THE RIGHT TO APPEAL THE DECISION OF THE LABOR BOARD

██ The petitioners contend that the school committee waived any right to challenge the labor board's inclusion of the position of secretary to the business manager within the bargaining unit by entering into contract negotiations with the union. As a consequence petitioners assert that the board's order was not properly before the Superior Court on review regardless of the procedure for appealing a certification order deemed appropriate in the case at bar. In support of their argument petitioners call our attention to the decision of the United States Court of Appeals for the Eighth Circuit in *Technicolor Government Services, Inc. v. NLRB*, 739 F.2d 323 (8th Cir.1984). In *Technicolor* the Eighth Circuit held that the mere commencement of collective bargaining operates as a waiver of any objection to a certification order entered by the NLRB. We decline to adopt this approach to the issue of waiver.[6] The provisions of § 42–35–15 afford a party aggrieved by a certification order the statutory right to obtain review of the ruling in the Superior Court. A right of such import is not abandoned lightly and we shall not consider it to have been surrendered simply because labor negotiations have begun.

The petitioners indicate that the primary intent of their proposed waiver doctrine is to force an employer to weigh the many costs of going forward with an appeal, including disruption of its operation as well as potential exposure to an unfair labor practice charge, against any gains that may be achieved through review. They argue that the procedure for appealing a certification order must compel such an accounting in order to deter legal activity aimed only at frustrating the manifest desires of employee groups to bargain collectively. We are sympathetic to petitioners' concerns about the corrosive effect of unmerited litigation in the labor field. However, we are persuaded that in its application the approach to waiver espoused by petitioners does not tend to encourage the swift and productive resolution of labor disputes.

Given the extent of federal preemption, most of the employers whose affairs are regulated under the Rhode Island Labor Relations Act and related legislation are public employers. The petitioners' proposed waiver doctrine is not likely to be effective in compelling a public employer to recognize a union if it opposes collective bargaining. Such an employer can allow a representation controversy to slide into arbitration or let it be decided by protracted judicial action with little price to pay for its refusal to bargain. Because a public employer's services are important to the health, safety, and/or welfare of an entire community, public policy militates against their delivery's being impaired in the face of labor unrest. Public employees are prohibited accordingly from striking or engaging in work slowdowns in support of their right to bargain collectively. *See* G.L.1956 (1986 Reenactment) §§ 28–9.1–2, 28–9.2–2, 28–9.3–1, and 28–9.4–1. As a consequence it is doubtful that the approach to waiver advanced by petitioners will deter a public employer committed to resisting unionization from using the legal system in an inappropriate manner.

In many other instances an employer might only have a limited concern regarding the certification of a small number of employees. The employer may be ready, as in the case at bar, not only to recognize the union's overall position as exclusive

---

6. A careful reading of the decision in *Technicolor* indicates that the Eighth Circuit was concerned to point out that any deviation from the NLRB's proper procedural course for appeal necessarily waives the right to contest certification. *Technicolor Government Services, Inc. v. NLRB*, 739 F.2d 323, 326–27 (8th Cir.1984). By entering into negotiations with a union, an employer obviously does not engage in a refusal to bargain immediately after certification, as is mandated by the NLRB's appeal provisions. Because we do not follow the NLRB in requiring that an employer commit an unfair labor practice in order to appeal a certification order, the Eighth Circuit's holding in *Technicolor* is not directly relevant to our considerations in the case at bar.

bargaining representative but also to enter into an agreement encompassing all pertinent matters except the subject of its appeal. In such a situation petitioners' proposed waiver doctrine would often lead by design to the unwarranted sacrifice of a colorable appeal in order for an employer to obtain labor peace. Should the employer decide instead that pursuing reversal of the board's ruling is of sufficient importance to its desired management posture, petitioners' theory forces the employer to hold up any and all labor negotiations to maintain an appeal. Such an outcome would be of dubious benefit to both labor and management. It denies employees the more rapid enjoyment of the fruits of collective bargaining while needlessly heightening strife in the workplace. We are convinced accordingly that the right to secure review of a certification order is not waived by the start of contract discussions between a union and an employer.

The petitioners also advance the argument that the collective bargaining agreement entered into by the union and the school committee acted as a waiver of the school committee's appeal of the board's ruling. They contend that the terms of the agreement acknowledge and incorporate the labor board's determination that the secretary to the business manager is not a confidential employee. We agree that a party may waive an appeal of an adverse board order expressly, such as by including a waiver provision in a labor contract. Such a waiver must be explicit, clear, and unequivocal. *See Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 103 S.Ct. 1467, 75 L.Ed.2d 387 (1983); *NLRB v. Lion Oil Co.*, 352 U.S. 282, 77 S.Ct. 330, 1 L.Ed.2d 331 (1957). However, after examining the certified record before us we conclude that the school committee did not waive its right of appeal. Nowhere in the record is there an indication of waiver with the requisite clarity and explicitness. We therefore find petitioners' argument to be unpersuasive.

## III

## THE CONFIDENTIAL STATUS OF THE SECRETARY TO THE BUSINESS MANAGER

Aside from their jurisdictional arguments, petitioners contend that the Superior Court exceeded its authority by substituting its judgment for that of the labor board when it reversed the board and held that the business manager's secretary is a confidential employee. We disagree and conclude that the court did not exceed the bounds of its scope of review under the APA.

As an initial matter it must be recognized that this court has not indicated previously whether employees who have unusual access to confidential labor relations materials or stand in confidential relationships to their employers may be precluded from membership in collective bargaining units. Such "confidential" employees are not excluded expressly from the ambit of the Labor Relations Act or of other legislation authorizing workers to bargain collectively if they so choose.[7] However, in the past we have followed the federal practice in holding that "managerial" and "supervisory" employees may not engage in collective bargaining. *State v. Local No. 2883, AFSCME*, 463 A.2d 186 (R.I.1983). We are persuaded that many of the factors that caused us to arrive at our decision in *Local No. 2883* are present in the instant case. The labor board's long-standing convention is to bar confidential employees from belonging to a bargaining unit, as it did with managerial and supervisory employees even before we ratified this practice in *Local No. 2883*. The labor board's administration of the state's labor laws clearly merits some consideration by this court. Additionally the same sorts of policy concerns that pointed toward our precluding managerial and supervisory employees from bargaining collectively in *Lo-*

---

7. Subsequent to the filing of the appeal in the instant case, the General Assembly amended the provisions of G.L.1956 (1986 Reenactment) § 28–9.4–2 to preclude "confidential" and "su- pervisory" municipal employees from belonging to a collective bargaining unit. *See* P.L.1989, ch. 58, § 1. The General Assembly did not, however, define these terms in the legislation.

cal No. 2883 are manifest in the case at bar. As with managerial and supervisory employees, to allow confidential employees to be union members would be to undermine the equality of bargaining power that the provisions of the Labor Relations Act seek to foster. It would be unfair for an employee who is entrusted with advance knowledge of his or her employer's labor relations policies to be able to share this information with a union that serves as that employee's collective bargaining representative. If a union were able to obtain such one-sided access to management's sensitive labor relations data, it would have a substantial and unwarranted advantage in its dealings with management. In other less frequent instances, prohibiting confidential employees from taking part in collective bargaining benefits labor by protecting a union from having to accept an employee into its ranks who will be sympathetic to management in prospective struggles. *See NLRB v. Hendricks County Rural Electric Membership Corp.*, 454 U.S. 170, 194–95, 102 S.Ct. 216, 231, 70 L.Ed.2d 323, 341 (1981) (Powell, J. concurring in part and dissenting in part). We are convinced accordingly that to preserve the integrity of the collective bargaining process, confidential employees must be excluded from membership in a collective bargaining unit. We now turn our attention to which employees should be deemed "confidential" employees.

■ Both the labor board and the Superior Court in its review of the board's decision embraced the test developed by the NLRB to assess the alleged confidential status of an employee, the "labor-nexus" test. The labor-nexus test is meant to be narrow in its application. Two categories of employees are recognized as "confidential" under the test and are therefore excluded from collective bargaining. The first category comprises "those confidential employees 'who assist and act in a confidential capacity to persons who formulate, determine, and effectuate management policies in the field of labor relations.' " *Id.* at 173, 102 S.Ct. at 220, 70 L.Ed.2d at 327–28 (quoting *B.F. Goodrich Co.*, 115 N.L.R.B. 722, 724 (1956)). The

second category consists of those employees who, in the course of their duties, " 'regularly have access to confidential information concerning anticipated changes which may result from collective bargaining negotiations.' " 454 U.S. at 189, 102 S.Ct. at 228, 70 L.Ed.2d at 337 (quoting *Pullman Standard Division of Pullman, Inc.*, 214 N.L.R.B. 762, 762–63 (1974)). For an employee to be considered a confidential employee, his or her job responsibilities must fall within at least one of the two categories.

■ In regard to the first category, the supervisor of the employee whose status is under consideration must have ongoing responsibility for developing labor policy. This qualification is to prevent an employer from temporarily investing a supervisor with influence over labor matters so that his or her personal secretary or assistant might be precluded from belonging to a bargaining unit. In this vein, employees who assist persons who merely serve as consultants or advisors in the field of labor relations do not fall within the scope of the test. *Holly Sugar Corp.*, 193 N.L.R.B. 1024 (1971). The relevant supervisor must also operate at a higher level than merely implementing routine, day-to-day administrative decisions needed to carry out a collective bargaining agreement or other labor policy without having any meaningful input into the contours of such an agreement or policy. *See* S. Mukamal & J. Grenig, *Collective Bargaining: The Exclusion of "Confidential" and "Managerial" Employees*, 22 Duq.L.Rev. 1, 20–21 (1983). Some tangible influence by the supervisor on the development of labor policy is required because many employees in an organizational hierarchy have an arguably confidential relationship with a superior who at least "effectuates" labor policy. A more expansive application of the exclusionary rule would deprive a great number of employees, in an unwarranted fashion, of the statutory right to bargain collectively. *See* Note, *The "Labor–Nexus" Limitation on the Exclusion of Confidential Employees—NLRB v. Hendricks County Rural Electric Membership Corp.*, 16 Ga.L.Rev.

745, 754 (1982) (citing *Union Oil Co. v. NLRB*, 607 F.2d 852, 853 (9th Cir.1979)).

■ In regard to the second category, the employee in question must be "in a confidential work relationship with a specifically identifiable managerial employee responsible for labor policy." *NLRB v. Lorimar Productions, Inc.*, 771 F.2d 1294, 1298 (9th Cir.1985) (citing *Union Oil Co. v. NLRB*, 607 F.2d 852, 853 (9th Cir.1979)). Casual access to labor-related information is not enough to disqualify an employee from belonging to a bargaining unit. For example, the mere typing of or handling of confidential labor relations material does not, without more, imply confidential status. *United States Postal Service*, 232 N.L.R.B. 556 (1978); *Ernst & Ernst National Warehouse*, 228 N.L.R.B. 590 (1977). The employee at issue must have regular and considerable access to such confidential information as a result of his or her job duties. The scope of the exclusionary rule does not extend to employees who have such access on an occasional, substitute, or overflow basis. *See* 22 Duq. L.Rev. at 22–23.

We are persuaded that the labor-nexus test strengthens the practice of collective bargaining in line with the objectives of the Rhode Island Labor Relations Act. In its usual application it is premised upon denying labor unfair access to management's confidential labor-relations strategies and data when management would not have similar access to labor's sensitive labor relations material. As a consequence it tends to encourage equitable collective bargaining between labor and management. We therefore adopt the labor-nexus test for purposes of this case as the proper method of ascertaining whether an employee performs confidential duties and should accordingly be precluded from membership in a bargaining unit. In utilizing the labor-nexus test in the case at bar, neither the labor board nor the Superior Court committed an error of law. However, we decline at this time to embrace the labor-nexus test as necessarily controlling in all future instances. It may be that a broader definition of those employees considered to be "confidential" would be desirable in other circumstances.[8] Because both tribunals below followed the dictates of the labor-nexus test in reaching their conclusions, we need not determine the appropriate scope of the test presently. We now turn our attention to whether the Superior Court substituted its judgment for that of the labor board outside the bounds of its statutory power of review.

As we have indicated, the operations of the labor board are included within the ambit of the APA's coverage and subject to its procedural requirements. *See* § 42–35–18. We therefore look to the APA's procedures for judicial review to determine whether the Superior Court exceeded its authority in the case at bar.

■ Under the terms of the APA, appellate jurisdiction in the Superior Court

8. In *NLRB v. Hendricks County Rural Electric Membership Corp.*, 454 U.S. 170, 102 S.Ct. 216, 70 L.Ed.2d 323 (1981) the United States Supreme Court concluded that the NLRB's usage of the labor-nexus test has a reasonable basis in law. In a separate opinion, part concurrence and part dissent, Justice Powell, joined by three other members of the Court, advanced an alternative formulation of the "confidential employee" doctrine that bears examining. Justice Powell stressed that the division between management and labor is "fundamental to the industrial philosophy of the labor laws of this country." *Id.* at 193, 102 S.Ct. at 230, 70 L.Ed.2d at 340. In order to maintain the adversary system of labor relations, he asserted that "employees who by their duties, knowledge, or sympathy [are] aligned with management should not be treated as members of labor." *Id.* In Justice Powell's view, the labor-nexus test is but a means to effectuating this end. He is persuaded that certain other confidential assistants "who are privy to the most sensitive details of management decisionmaking, [and] who work closely with managers on a personal and daily basis" should be precluded from collective bargaining even if they do not handle labor relations materials as part of their duties. *Id.* at 194–95, 102 S.Ct. at 231, 70 L.Ed.2d at 341. This is because "the essence of their working relationship requires undivided loyalty." *Id.* at 200, 102 S.Ct. at 233, 70 L.Ed.2d at 344. We are unwilling to decide at the present time the extent to which Justice Powell's doctrine is compatible with the objectives of the Rhode Island Labor Relations Act. For purposes of the instant case it is clear that even under Justice Powell's approach employees who fulfill the requirements of the labor-nexus test may not belong to a bargaining unit.

is conferred by § 42–35–15 to review final orders and certain interlocutory orders of state administrative agencies not exempted explicitly from the provisions of the act. The court is limited to an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision. *Blue Cross & Blue Shield v. Caldarone*, 520 A.2d 969, 972 (R.I.1987); *Narragansett Wire Co. v. Norberg*, 118 R.I. 596, 607, 376 A.2d 1, 6 (1977). The Superior Court is not to substitute its judgment on questions of fact for that of the agency whose actions are under review. *Lemoine v. Department of Mental Health, Retardation and Hospitals*, 113 R.I. 285, 291, 320 A.2d 611, 614–15 (1974). This is so even in situations in which the court, after examining the certified record, might be inclined to view the evidence differently and draw different inferences from those of the agency below. *Cahoone v. Board of Review of the Department of Employment Security*, 104 R.I. 503, 506, 246 A.2d 213, 214–15 (1968). If competent evidence exists in the record considered as a whole, the court is required to uphold the agency's conclusions. However, it may reverse, modify, or remand the agency's decision if the decision is violative of constitutional or statutory provisions, is in excess of the statutory authority of the agency, is made upon unlawful procedure, is affected by other errors of law, is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record, or is arbitrary or capricious and is therefore characterized by an abuse of discretion. Section 42–35–15(g).

In the instant case the Superior Court examined the certified record and determined that the board's finding that the secretary to the business manager is a nonconfidential employee under the labor-nexus test was clearly erroneous in light of the reliable, probative, and substantial evidence on the record taken as a whole. *See* § 42–35–15(g)(5). The court was persuaded that this evidence indicates that the position is one in which the secretary has regular access to confidential information concerning collective bargaining matters, anticipated contract changes, and disciplinary

matters. It could find no competent evidence to the contrary. As a consequence the court reversed the decision of the labor board in regard to the confidential status of the business manager's secretary.

■ Our consideration of the final judgment of the Superior Court rendered in proceedings brought under § 42–35–15 is confined to a review by writ of certiorari of "any questions of law involved." Section 42–35–16. We have described this function previously as determining whether there is any legally competent evidence to support the actions of the reviewing court. *Herald Press Inc. v. Norberg*, 122 R.I. 264, 405 A.2d 1171 (1979); *Correia v. Norberg*, 120 R.I. 793, 391 A.2d 94 (1978). In the case at bar this determination means that we must examine the record of the Superior Court to see whether the court concluded properly that the labor board's ruling was unsupported by substantial evidence on the record taken as a whole and was therefore clearly erroneous. We do not weigh the evidence but merely ascertain whether the court was justified in its modification or reversal of the board's order. *Prospecting Unlimited, Inc. v. Norberg*, 119 R.I. 116, 123, 376 A.2d 702, 706 (1977). If there is in fact no reliable, probative, and substantial evidence on the whole record to sustain the board's findings, we are constrained to affirm the judgment of the Superior Court. We now turn to our examination of the certified record.

■ Extensive probative evidence is contained in the record concerning the duties of both the business manager and the secretary to the business manager and how those responsibilities have been carried out previously. It is undisputed that the school committee's business manager formulates, determines, and effectuates management policies for the school department in the field of labor relations. The business manager, Ralph Malafronte (Malafronte), is responsible for conducting labor relations with three certified unions, including the union involved in this litigation. In the past Malafronte has served as chief negotiator for the school committee in both the custodial and the clerical employee bar-

gaining units. In this capacity, he arranged confidential financial information, generated and reviewed bargaining proposals, and made recommendations to the school committee about management strategy. Malafronte also served as the school committee's designee to hear pre-arbitration grievances concerning custodial and maintenance workers. He was frequently involved in sensitive discussions with legal counsel about all these matters. In addition Malafronte played a significant role in running the school committee's campaign during the union's representation election. It is uncontroverted that Malafronte performed all these duties in the past and is expected to do so for the foreseeable future.

There is some conflict in the record regarding the job description and actual responsibilities of the secretary to the business manager. However, the reliable, probative, and substantial evidence on the record considered as a whole indicates that the secretary to the business manager has complete access to any privileged labor relations material that passes through the business manager's office. The secretary, Sandra Whittaker (Whittaker), testified that she types and files most of, if not all, the confidential information used by the business manager for disciplinary matters and employee grievances. Consequently she has familiarity with the school committee's position on grievances before it is otherwise disclosed. Whittaker's duties have also included preparing salary schedules and contract proposals for negotiations with teachers and custodial and maintenance workers. Additionally she has handled all confidential correspondence between the business manager and legal counsel concerning labor negotiations. Because of her duties Whittaker has advance knowledge of the school committee's negotiating strategy including awareness of proposals that have been approved but not actually submitted to the unions. With reference to the representation election related to the case at bar, she prepared all correspondence pertaining to the election, including information concerning the school committee's election tactics. All these facts were supported by the credible and reliable evidence reviewed by the Superior Court.

From our examination of the certified record, we are convinced that the Superior Court concluded properly that the labor board's decision was clearly erroneous. There is no competent evidence in the record in accordance with the dictates of the labor-nexus test to support the board's finding that the business manager's secretary should not be excluded from the bargaining unit. Under the labor-nexus test, for an employee to be deemed a confidential employee for collective bargaining purposes, he or she must either " 'assist and act in a confidential capacity to persons who formulate, determine, and effectuate management policies in the field of labor relations' " or " 'regularly have access to confidential information concerning anticipated changes which may result from collective-bargaining negotiations.' " *Hendricks*, 454 U.S. at 189, 102 S.Ct. at 228, 70 L.Ed.2d at 337. The facts of the case at bar fulfill without question the requirements of both aspects of the labor-nexus test.

It is apparent from the record that the business manager to the school committee has significant responsibility for developing and carrying out management policies in the labor relations field. This responsibility is neither provisional nor minor but is ongoing and prominent. It is discharged at a high level in the school committee's operation. It goes beyond simply administering policies that one did not have a meaningful role in shaping. It is equally evident from the record that the secretary to the business manager acts in a confidential capacity to the business manager. She is his personal secretary and is primarily responsible for the preparation and handling of sensitive labor relations material in the business manager's office. As a consequence her position is plainly a confidential one under the labor-nexus test.

The secretary to the business manager must also be considered a confidential employee in light of her substantial and steady access to privileged labor relations

materials. It is uncontroverted in the record that she has access to sensitive data concerning contract proposals being formulated by the school committee. This access is regular and considerable. It is not occasional or the result of temporary assignment. She not only has been entrusted in the past with knowledge of management strategy under discussion but also has had advance familiarity with tactics that have actually been decided upon. If she were to be included in the bargaining unit, the union might become prematurely acquainted with this kind of information and would gain an unjust advantage in negotiations and in grievance matters. The nature of her actual contact with confidential labor relations information puts her clearly within the ambit of the labor-nexus test.

After a searching review of the evidence presented, we conclude that there is no competent evidence in the record considered as a whole to support the labor board's decision to include the position of secretary to the business manager within the bargaining unit.

For the reasons stated, the petition for certiorari is denied. The writ heretofore issued is quashed. The judgment of the Superior Court is affirmed, and the papers in this case may be remanded to the Superior Court with our decision endorsed thereon.

FAY, C.J., did not participate.