DECISION
This civil action is an administrative appeal pursuant toG.L. 1956 (1990 Reenactment) § 42-35-15 from a decision of the defendant Rhode Island State Labor Relations Board (hereinafter "the SLRB") issued on July 5, 1994 certifying the results of an election of the defendant Teamsters Local Union No. 64 (hereinafter "the Union") as the collective bargaining representative of certain of the plaintiff's employees. This action was filed on August 3, 1994. The SLRB certification was stayed by the Court on October 5, 1994. Briefing was concluded on December 22, 1994.
This administrative appeal raises once again the issue of the right of mid-level management employees to bargain collectively under the State Labor Relations Act [G.L. 1956 (1986Reenactment) §§ 28-7-1, et seq.]. See Woonsocket HousingAuthority v. State Labor Relations Board, C.A. No. PC 93-0095 (Providence County Superior Court decision filed June 1, 1994). It is clear from State v. Local No. 2883, AFSCME,463 A.2d 186 (R.I. 1983) that some employees of some employers subject to the State Labor Relations Act are not protected under the act and are not permitted to be members of a bargaining unit. In that case the Supreme Court referred with approval to a policy of the SLRB adopted in 1973 which excluded top-level supervisory personnel from organizing and bargaining collectively. The Supreme Court did not in that case approve any particular standard for deciding which supervisory or managerial employees, if any, may be included in a bargaining unit.
The scope of this Court's review under § 42-35-15 of the decision of the SLRB is strictly circumscribed. BarringtonSchool Committee v. Rhode Island State Labor Relations Board,608 A.2d 1126, 1137-38 (R.I. 1992). If there is competent evidence in the record to support the SLRB's findings of fact, the Court must accept those findings. The problem presented by cases such as this one is that some supervisors and managers are included among the employees eligible to bargain collectively and some are not. The standard to be applied in separating them is a question of law. Whether any particular employee falls on one side or the other of that standard is a question of fact. According to § 28-9.4-2(b)(4) "Supervisory" and "confidential" employees are excluded from the definition of "municipal employees." Section 28-9.4-2(b)(7) specifically vests authority in the SLRB to decide who are supervisory and confidential employees. Before the SLRB can decide, as a matter of fact, who
is a supervisory employee, it must decide, as a matter of law,what a supervisory employee is. The latter decision is most acute because some employees who do perform some supervisory functions should not be considered excludable "supervisory" employees within the meaning of the act.
In Woonsocket Housing Authority, supra, this Court rejected the SLRB's 1973 and 1979 policy declarations with great reluctance. Those standards were found by the Court not to be useful in deciding which supervisors and which managers should be permitted to bargain collectively. The Court is perfectly well aware that the SLRB is an agency of unquestioned expertise and that its construction of laws, which it is charged with implementing, must enjoy great respect and deference from the Courts. This Court proposed that as an alternative to an adhoc approach on a case-by-case basis the law requires that the SLRB focus on the potential for conflict of interest in deciding whether an employee should or should not be permitted to bargain collectively with other employees. The Court suggested that it was unwise not to have clearly articulated guidance in an area where the boundaries between labor and management are blurred. In this area the same employee can be and often is both a boss and a worker. A boss should not bargain for the workers; nor should a worker side with the bosses in supervising other workers. Nor should a person entrusted with some supervisory functions be entirely barred from the benefits of collective bargaining with his or her employer.
In this case the employer has objected to the inclusion of thirteen employees in the collective bargaining unit. It claims that the positions of (1) Head of Reference Services, (2) Head of Children's Services, (3) Reader's Advisor and Interlibrary Loan Manager and (4) Circulation Department Manager are positions filled by "supervisory" employees, and that the position of Secretary to the Executive Director is filled by a "confidential" employee. Therefore, it argues that these employees are excluded from the definition of "municipal employee" according to §28-9.4-2(b)(4). It also claims that seven part-time employees are excluded from the definition of "municipal employee" according to § 28-9.4-2(b)(7), because the employer is an authority, other than a housing authority, not under direct
management by a municipality. In addition, while conceding that its custodian is a "municipal employee", as defined, it says that it cannot be compelled to bargain "collectively" with a unit consisting of a single employee.
The SLRB concluded that the employer had failed to prove that it was an authority "independent of the Town of West Warwick." That conclusion is based on an obvious error of law. The employer need not demonstrate its independence, fiscal or otherwise from the relevant municipality. It need only demonstrate that the municipality does not exercise direct, as distinguished from indirect, management of its affairs.
The provisions of Chapter 4, "Free Public Libraries", ofTitle 29 of the General Laws make abundantly clear that public libraries administered under its provisions must, as a matter of law, not be under the direct management of the municipality in which they are located. According to § 29-4-5
the city or town council is required to elect a board of trustees of any free public library established by such city or town. While the municipality may take title to land held by the library and the Treasurer of the municipality may take possession of funds belonging to the library, according to Industrial TrustCompany v. City of Central Falls, 60 R.I. 218, 197 A. 467
(1938), the trustees are in exclusive possession and control of the library and its funds, whether obtained as gifts or from municipal appropriations. §§ 29-4-6 and 29-4-7. The respective city and town treasurers have no authority under the law of this State to refuse to pay all bills including payrolls, properly certified by the trustees, provided there are donated or appropriated funds in their hands sufficient to pay them. §29-4-7.
To the extent that the Town of West Warwick provides payroll and employee benefit services to the employees of the library, the evidence is uncontradicted that they do so as agents for the library for its convenience and not by virtue of any statutory authority. The Findings of Fact set forth as numbers 1 through 7 on pages 25-26 of the decision of the SLRB regarding the source of library funds and employee payroll and benefit services are utterly immaterial on the issue of whether or not the municipality directly manages the library. Findings of Fact number 8 on page 26 is actually a conclusion of law and applies an erroneous "independent authority" test, instead of the "direct management" test mandated by the statute.
It is true, of course, that control of the purse suggests some control of its owner. That kind of management is logically only indirect at best. No evidence whatsoever was presented to show that the municipal government of the Town had ever even tried to exercise any management, let alone direct management of the operation of the library. Even with regard to funding it is difficult to understand the SLRB's conclusion at page 25 of its Decision that, ". . . the Board of Trustees has no independent authority to raise funds for the day-to-day operation of the library", in the light of § 29-4-8 and the uncontradicted evidence that the library was the recipient of other funds from other sources from time to time.
The Decision of the SLRB as to the seven "part-time" employees was clearly wrong as a matter of law. They may not lawfully be included in a collective bargaining unit.
The employer argues that the employee in the Secretary to the Executive Director was a "confidential" employee and should be excluded from the proposed bargaining unit. The SLRB correctly applied the so-called "labor-nexus" test referred to inBarrington School Committee v. Rhode Island State LaborRelations Board, 608 A.2d 1126 (R.I. 1992). It found that this employee did not assist or act in a confidential capacity to persons who formulate, determine and effectuate management policies in the field of labor relations. It also found that this employee did not in the course of employment duties regularly have access to confidential information concerning anticipated changes which may result in collective bargaining negotiations nor have regular and considerable access to such confidential information as a result of employment duties. This employee, they concluded, failed to fall in either class of "confidential" employee.
The evidence is clear that the Secretary neither assists nor acts in a confidential capacity to the persons who formulate, determine and effectuate management policies in the field of labor relations. The evidence shows that the persons who do ultimately formulate, determine and effectuate those policies are the Board of Trustees, themselves. The evidence does not show that the Secretary acts in any capacity, let alone a confidential one, to the Board. While this employee does perform clerical services for the Executive Director and Assistant Executive Director, who may be said to assist the Board in their labor relations policies, there is no evidence that any of those services involved confidential matters of any kind.
The budgetary and financial affairs of the library is generally public information and cannot be regarded as confidential. Except as to identifiable employees, in the absence of legislation making even that information public, the payroll, too, is public. See Providence Journal Co. v. Kane,577 A.2d 661 (R.I. 1990). The employer's argument that the Secretary would perform the same duties as the secretary to the business manager of the Barrington School Committee, who was found to be a "confidential" employee in Barrington School Committee,supra, is purely speculative as the SLRB points out in its Decision. It cannot become the basis for the exclusion of collective bargaining benefits from an otherwise eligible employee.
It is equally clear from the evidence that this employee has very limited access to any confidential information of any kind in the course of employment. The employee obviously has no regular access to the information described in the second classification under the "labor-nexus" test. The SLRB is correct to point out that the employer may not exclude an employee from a collective bargaining unit by predicting that it might in the future regularly confide such information to this employee. The employer may well wish not to use this employee in the future to deal with confidential information developed for labor relations matters. If so, any other person who performs the clerical duties required by managerial personnel in regard to labor relations matters will not be eligible to bargain collectively, as a "confidential" employee.
The SLRB meticulously and conscientiously analyzed the hearing evidence on the issue of whether or not each of four full-time employees held a "supervisory" position. The SLRB, however, continued to apply its "top-level supervisory" test to each position and found, as would be expected, that none of these employees satisfied that test. The top-level of managerial supervision of the library staff is obviously occupied only by the Executive Director and the Assistant Director.
The hearing record is replete with evidence that the employees in each of the four positions, which the employer contends are supervisory, exercises some supervision over some employees. Although budgetary constraints at the time of hearing limited the supervised positions to those filled by "part-time" employees, the Board of Trustees hoped that it could afford to put some full-time employees under the supervision of some of the contested positions. And thus it is that we re-visit the problem of collective bargaining for mid-level supervisors.
As to the "Head of Reference Services" the SLRB commented:
 "The Board is aware that the `Head of Reference Services' may have some supervisory responsibilities in relation to Aides, when and if they are working, and with respect to volunteer workers, in order to be sure that they perform their assigned duties."
Similarly, with regard to the "Head of Children's Services" and "Reader's Advisor and Interlibrary Loan Manager" the SLRB observed:
 "The Board is aware that the `Head of Children's Services' may and does have some supervisory responsibilities in relation to part-time employees when they are working to ensure that such part-time employees are performing their duties properly."
 "The Board is aware that the `Reader's Advisor' may and does have some supervisory responsibilities in relation to part-time employees and volunteers when they are working to ensure that they are properly performing their duties."
Finally, in the same terms referring to the "Circulation Department Manager", the SLRB observed:
 "The Board is aware that the `Circulation Department Manager' may and does have some supervisory responsibilities in relation to part-timers working in the Department to ensure that they properly perform their duties."
There is absolutely nothing in the record to show that any of these four "Department Heads" supervises each other or the Secretary or Custodian. While their loyalty vis-a-vis the labor of part-time aides and volunteers working in their respective departments of the Library must be exclusively to management, and not to their supervisees, no reason exists why they cannot collectively bargain with management for their common interests together with the Secretary and the Custodian. All of them are supervised by "top-level supervisors", on the behalf of the Board of Trustees. So long as the part-time employees, and any other "rank-and-file" workers supervised by members of this collective bargaining unit are not included in the unit, no conflict will arise, which the exclusion of "supervisory" employees is designed to avoid.
The Court is aware that the employee in the position of "Head of Children's Services" may supervise the entire library in the absence of both the director and assistant director. The Court concludes that it would be unfair to deny this employee the benefits of collective bargaining because the employee may temporarily have a management responsibility. The likelihood that this employee would engage in substantial or meaningful supervision of the other members of the collective bargaining unit is so slight that it can safely be ignored, as it was by the SLRB.
Accordingly, the Decision and Direction of Election of the SLRB entered on May 3, 1994, must be modified so that only the employees in the position of Head of Reference Services, Head of Children's Services, Reader's Advisor and Interlibrary Loan Manager, Circulation Department Manager, Secretary and Custodian, and excluding all other employees of the employer, shall be eligible to elect by secret ballot a collective bargaining agent.
According to the record, a fair election was held on June 28, 1994. Twelve employees, including six ineligible part-time employees, were considered eligible to vote under the SLRB's May 3, 1994 Direction of Election. Eleven employees voted for Teamsters Local Union No. 64, and one employee did not vote. There is no need to hold a new election. No employee, eligible, or ineligible, voted against the Union. Accordingly, the Certification of Representatives issued by the SLRB on July 5, 1994 must be modified by deleting therefrom any reference to "and all Part-Time employees working less than an average of twenty hours per week", as represented by Teamsters Local Union No. 64 as exclusive collective bargaining representative.
The employer shall proceed to bargain forthwith in good faith according to the provisions of § 28-9.4-5 with representatives of Teamsters Local Union No. 64 as the bargaining agent of the collective bargaining unit as modified.
The plaintiff will present a form of judgment for entry upon notice to the defendants.