DECISION
This is an appeal from a decision of the City Council of the City of Newport (City Council), acting as the licensing board or authority for the City of Newport. The appeal is of the City Council's decision of June 12, 1996 denying plaintiff's applications for Class B (outdoor) Public Entertainment Licenses. Jurisdiction in this Court is pursuant to G.L. § 42-35-15.
Facts/Travel
IDC Clambakes, Inc., d.b.a. Island Clambakes (plaintiff) is the owner of eight acres of undeveloped land on Goat Island in the City of Newport. Plaintiff proposes to construct a clambake restaurant on this property with facilities for private parties and events. Such functions would be held both inside the restaurant and on an outside patio. The proposed structure meets zoning requirements, but the operation of the business also requires the issuance of certain licenses, including a Class A Public Entertainment License for indoor entertainment and a Class B Public Entertainment License for outdoor entertainment. City of Newport Ordinance, § 5.68.020 (A). A victualing license was previously obtained.
On April 19, 1996, plaintiff submitted an application for both a Class A (indoor) and a Class B (outdoor) Public Entertainment License. See Applications for Public Entertainment License dated 4/18/96. On May 22, 1996, a public hearing was held before the City Council on the application. It was denied because plaintiff did not plan to erect a permanent enclosed structure as required by Ch. 5.68 of the Ordinance. On May 23, 1996, plaintiff submitted three additional applications for Public Entertainment Licenses: a Class A license (indoor) and two Class B licenses (outdoor) with alternate hours of operation; one from 11:00 a.m. to 10:00 p.m. and one from 11:00 a.m. to 11:00 p.m. See
Application for Public Entertainment License dated 5/23/96.
The new applications were made following revisions in plaintiff's plans with respect to the enclosure of the structure. Section 5.04.060 of the Ordinance precludes a person from applying for a license within ninety (90) days following the denial of an application absent a substantial change in the application. The City Council did not rely on that provision in determining the subject applications.
On June 12, 1996, a public hearing was held before the City Council. The City Council granted the Class A Public Entertainment License, but denied the applications for Class B Public Entertainment Licenses. An examination of the record reveals that the City Council based its rejection on a concern that noise from the proposed outdoor entertainment might interfere with the general welfare of the public. The basis for this concern appears to be twofold: first, plaintiff sought permission to offer outdoor entertainment before opening its business and establishing itself as a good neighbor (Hereinafter, the "good neighbor" issue); and second, the city had not enacted guidelines to restrict outdoor public entertainment which prompted some members of the Council to call for a moratorium on all outdoor entertainment licenses (Hereinafter, the "moratorium" issue).
The following concerns were expressed by the City Council and by those appearing to oppose the Class B licenses. Councilmember Shaw stated:
 ". . . I have been very very clear and adamant about my concern for noise, especially from this project because of the nature of noise traveling across water on the prevailing southwesterly by winds to the Point neighborhood which is my constituency . . . I'm not comfortable moving so quickly on these things . . ." (Tr. at 5).
The president of the Point Association, Christine Montenaro, spoke against the application:
 ". . . It is eight acres of undeveloped property and I'm not really sure if you are taking enough time to look at the whole thing in a comprehensive fashion . . ." (Tr. at 10).
Councilmember Sardella stated:
 ". . . I'd like you to prove to that lady that spoke that he [plaintiff] is a good neighbor. You've got your inside entertainment license. Put your building up. Open up. Prove to your neighbors that you're a good neighbor. Then come back before us." (Tr. at 14).
In response to the suggestions that plaintiff begin operating with the Class A license, plaintiff's principal, Mr. Roos, argued that outside entertainment is a fundamental part of the entire operation. He questioned whether the plaintiff would be able to go forward with its project absent a Class B license. (Tr. at 14).
On the evening of the hearing, Councilmember McCoy sought a moratorium on Class B licenses. The "moratorium" issue was presented as follows:
 ". . . My concern here is that this is an outdoor entertainment establishment and that under the guidelines or lack of guidelines, that this could very easily become an eight acre tent . . . I think that this entire issue of outside entertainment including tent accessories, etc. . . . is a fundamental problem that goes to the peace and tranquility of the entire community and therefore needs to be addressed . . . The moratorium is to address those kinds of things. I would say that this application is not ripe certainly for my approval at this time for those reasons." (Tr. at 15).
Councilmember Warren Gray made the motion to deny the application. In so moving, he stated:
 ". . . we are going to have a workshop on the 17th day of July to discuss noise. Part and parcel in getting to that point was the issue of outside amplified music and whether or not we should have a moratorium on outside amplified music until we had a discussion and set our policy. So, with that in mind, . . . In our package tonight is a resolution from Councilman McCoy to put a moratorium on those licenses . . . Any new Class B licenses, this is a new Class B license, since we haven't established our policy. How are we going to address it. I'm going to make a motion that we deny until after we set our policy." (Tr. at 14).
That motion carried, and the applications were denied. (Tr. at 16). Under the applicable sections of the Ordinance, the denial precludes plaintiff from re-filing the same application for at least ninety (90) days. City of Newport Ordinance, § 5.04.060.
Standard of Review
Superior Court review of an administrative decision is controlled by G.L. 1956 § 42-35-15 (g), which provides:
 "45-35-15. Judicial Review of Contested Cases.
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
 (1) in violation of constitutional or statutory provisions;
 (2) in excess of the statutory authority of the agency;
 (3) made upon unlawful procedure;
 (4) affected by other error of law;
 (5) clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a licensing board or officer to determine whether it exceeded its authority, the court examines, but does not weigh the evidence or pass upon its credibility.Barrington School Committee v. Rhode Island State Labor RelationsBoard, 608 A.2d 1126, 1138 (R.I. 1992). The court determines whether there is any legally competent evidence to support the ruling. Id. The granting or denial of a license is a function that is administrative in its nature and is discretionary with licensing boards or officers. Fink v. Bureau of Licenses,90 R.I. 408, 158 A.2d 820 (1960); Gimmicks, Inc. v. Dettore, 612 A.2d 655
(R.I. 1992).
The Licensing Standards
General Laws § 5-22-1 provides that "city councils may license, regulate, and in those cases specifically set forth in § 5-22-5, may prohibit and suppress . . . shows and performances in their respective towns, conforming to law." Section 5-22-5 provides, in pertinent part:
 "any town council . . . or any other licensing board or authority in any city or town may require a license for any place within its respective city or town at which any performances, shows, exhibitions, public roller skating, dances, or balls are presented or conducted for any term not exceeding one year, and may deny, revoke, or refuse to renew any such license only upon the ground that the place presents a danger to the public health or safety."
Chapter 5.68, of the Codified Ordinances of the City of Newport, Rhode Island, entitled "Public Entertainment" provides, in pertinent part:
 "5.68.010 Intent
 The purpose of this section is to protect the public health, safety and general welfare through the regulation of public entertainment . . .
 5.68.020 License Required
 A. No person or organization shall conduct or operate outdoor entertainment without first obtaining a Class B Public Entertainment License from the City Council. Only a person or organization holding a Class A Public Entertainment License may apply for a Class B Public Entertainment License.
 . . .
 D. The City Council, pursuant to Title 5, Chapter 22, of the General Laws of Rhode Island, may place conditions on the issuance of a . . . Class B Public Entertainment License . . ."
Plaintiff contends that the quoted sections of the Ordinance are unconstitutional because they contain no standard or guidelines to control the licensing decisions of the City Council. Because music, as a form of expression and communication, is protected under the First Amendment, the Federal Constitution prohibits attempts to censor musical compositions to serve the needs of the state. Ward v. RockAgainst Racism, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989).
Freedom of speech is among the fundamental personal rights and liberties which are protected by the Fourteenth Amendment from invasion by state action, including state action in the form of municipal ordinances adopted under state authority. Staub v.Baxley, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958). A law subjecting the exercise of First Amendment freedoms of speech to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional. Shuttlesworth v. Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). An ordinance that makes peaceful enjoyment of First Amendment guarantees contingent upon the controlled will of an official, as by requiring a license that might be granted or withheld at the direction of such official, is an unconstitutional prior restraint upon the enjoyment of those freedoms. Id.
A licensing authority may impose reasonable restrictions on the time, place, or manner of presenting musical entertainment. However, the restrictions must be justified without reference to the content, must be narrowly tailored to serve a significant governmental interest, and must leave open ample alternative channels for presenting the music." Ward v. Rock Against Racism, supra; Gimmicks, Inc. v. Dettore, supra. Moreover, the government has a substantial interest in protecting its citizens from unwelcome noise. Noise can constitute a nuisance when it unreasonably interferes with a person's use and enjoyment of his property. DeNuccia v. Pezza, 114 R.I. 123, 329 A.2d 807 (1974);Gimmicks, Inc. v. Dettore, supra.
In this case, the "moratorium" issue was raised by those Councilmembers who felt that there were insufficient guidelines for the licensing authority to follow in determining applications for outdoor entertainment licenses. (Tr. at 14, 15). The moratorium was urged until such time as a policy was set and guidelines promulgated. There are at least two problems with this position. First, by acknowledging the absence of sufficient guidelines, the Council is admitting that the Ordinance fails to meet constitutional muster. See Shuttlesworth v. Birmingham, supra. The guidelines and standards must be sufficient to control the licensing decisions of the city. A licensing authority is powerless to restrict free speech absent the existence of narrow, objective and definite standards. Id. Second, General Laws §5-22-1 does not permit a city council to declare a moratorium on entertainment licenses on such a basis. Section 5-22-5 permits the council to suppress entertainment only upon the ground that the place presents a danger to the public health or safety. It cannot deny a license while the city promulgates policies and guidelines.
With respect to the "good neighbor" issue, there appears to be no support for such a requirement in the applicable Ordinance. The Ordinance does require that an applicant for a Class B Public Entertainment License hold a Class A Public Entertainment License. City of Newport Ordinance, § 5.68.020. However, there is no requirement that the applicant operate under the Class A license before applying for a Class B license. Even the requirement that an applicant for an outdoor public entertainment license hold an indoor public entertainment license is subject to constitutional attack.
In this case, the Class A license was granted before the motion was made to deny the Class B license. (Tr. at 13, 14). However, it was not granted before the plaintiff applied for the Class B Public Entertainment License. The licenses were sought simultaneously. This deviation from the provision of the Ordinance was never raised at the hearing nor is it briefed.
With respect to the "good neighbor" issue, the City Council is imposing a prior restraint on plaintiff's right to offer outdoor entertainment. The relevant question in determining whether a regulation constitutes a prior restraint is whether it authorizes the suppression of speech in advance of its expression. Ward v. Rock Against Racism, supra. Fear or apprehension of disturbance is not enough to overcome the right of freedom of expression. Fricke v. Lynch, 491 F. Supp. 381
(D.C.R.I. 1980). Any prior restraint of expression bears a heavy presumption against its constitutional validity. Austin v. Keefe,402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971); Carroll v.President and Commissioners of Princess Anne, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968).
In Ward v. Rock Against Racism, supra, the city's guideline required sponsors of all musical performances at a city park bandshell to use sound amplification equipment and a sound technician provided by the city. This guideline was upheld as a reasonable regulatory measure to limit and control noise. The Court ruled that it did not constitute a prior restraint because it does not grant the city the authority to forbid speech, but merely to regulate its volume to the extent necessary.
In this case, speech in the form of outdoor entertainment has been forbidden. The licensing authority herein required proof of an established record of conducting business under a Class A license. No other evidence would have sufficed. That being the case, no new business could ever offer outdoor entertainment. This imposes an unreasonable burden on free speech.
In contrast, in the case of Gimmicks, Inc. v. Dettore, supra, the applicant had previously offered outdoor entertainment at the subject location. Evidence was presented concerning the excessive levels of noise caused by that entertainment. There was evidence that the noise levels disturbed the sleep of neighbors and nearby hotel guests. Likewise, in the First Circuit case of SteppingStone Enterprises, Ltd. v. Andrews, 531 F.2d 1 (1st Cir. 1976), the plaintiff was denied a license to conduct a weekend rock concert on its property. The licensing authority based its decision on evidence of problems that arose with prior concerts conducted at the location. There had been trespasses upon private property by patrons and others attending the concerts. There were problems with litter. Traffic congestion made it difficult for the performance of municipal safety services.
There was no similar evidence in this case that the plaintiff's operation would cause a disturbance. Councilmember Dennis McCoy stated at the hearing:
 ". . . you are not even in operation. You haven't even dug a whole in the ground as far as I know. So, everything is on speculation. This council has some serious concerns and those are the concerns. It is not speculating that you will be good or that you will be bad . . . As several people have said, once it is approved, it is done." (Tr. at 16).
The decision to deny the license was based on speculation and on fear rather than on legally competent evidence. The denial of the application for a Class B Public Entertainment License in this matter was in violation of constitutional and statutory provisions. It was in excess of the statutory authority of the City Council. It was arbitrary and was characterized by an abuse of discretion or a clearly unwarranted exercise of discretion. Substantial rights of the plaintiff have been prejudiced thereby. Accordingly, the City Council's decision is hereby reversed.
Counsel shall submit the appropriate judgment for entry.