**VICTORIA STATION, INCORPORATED, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 77-3451.

United States Court of Appeals, Ninth Circuit.

Oct. 2, 1978.

Rehearing and Rehearing En Banc Denied Nov. 22, 1978.

Robert V. Magor of Severson, Werson, Berke & Melchior, San Francisco, Cal., for petitioner.

Elliott Moore, Washington, D. C., for respondent.

Before TRASK and SNEED, Circuit Judges, and CRAIG,* District Judge.

SNEED, Circuit Judge:

Victoria Station, Inc. petitions this court for review of a National Labor Relations Board order directing it to bargain with the Hotel and Restaurant Employees and Bartenders Union, Local 2 (the Union). The Board seeks enforcement of the decision and order reported at 233 N.L.R.B. No. 8 (1977). We enforce the order.

Victoria Station, Inc. (the Company) operates approximately fifty-one restaurants throughout the United States and Canada. Seeking to organize the workers at two of these restaurants, Victoria Station at 50 Broadway and Thomas Lord's at 2000 Union Street, both in San Francisco, the Union filed representation petitions with the Board. The Union contended that the employees at each of the restaurants constituted an appropriate collective bargaining unit. The Company contended that only a multi-restaurant unit including the employees of its seven San Francisco Bay Area restaurants was appropriate.

---

* Hon. Walter E. Craig, United States District Judge for the District of Arizona, sitting by designation.

Disregarding a 1973 determination which found a single unit of one Bay Area restaurant was inappropriate for Victoria Station, the Regional Director approved the two separate bargaining units. The Board denied the Company's request for review and separate elections were held. The result of the election held at the Broadway facility was 54–8 in favor of the Union, and at the Union Street facility the result was 13–12 in favor of the Union.

The Company filed objections to both elections alleging election misconduct by Union agents, certain employees, and the Board agent. The Regional Director found these charges insufficient to overturn the elections and the Board denied the Company's request for review of that determination.

The Union filed unfair labor practice charges when the Company refused to bargain with either unit. The Company responded that the certification of the Union and the elections were invalid on the grounds that the single restaurant units were inappropriate for bargaining and its objections to the elections were improperly overruled by the Board. On a motion for summary judgment the Board found the Company in violation of Sections 8(a)(5) and (1) of the National Labor Relations Act. The Company repeats both contentions before this court.

## I.

■ Of the two contentions only the first, *i. e.*, that the single restaurant units are inappropriate, presents a difficult issue. Its difficulty has its origin in the 1973 decision of the Regional Director which held a single restaurant unit was inappropriate. It would be more troublesome but for the fact that in this proceeding the Regional Director has made findings regarding the extent to which management authority is centralized that distinguish this proceeding from that in 1973. In the latter proceeding the Director found that the manager of the individual restaurant required approval of a regional manager to hire, discharge, transfer, suspend, or promote employees. The individual restaurant manager had authority only to fix work schedules of employees.

In the present proceeding, however, the Regional Director has made quite different findings.[1] The scope of managerial control exercised by the individual restaurant manager has been considerably expanded. For example, each local manager retains control over conditions of employment in the day-to-day operation of the restaurant. He has authority to screen job applicants, hire and discipline employees, discharge employees subject in some cases to Company review, promote employees, grant merit salary in-

1. Those findings provide in their applicable part:

"Finally, with respect to the issue of the degree of day-to-day managerial responsibility exercised by the restaurant managers, the record establishes that they both interview and hire applicants for employment and that their judgment in this area does not require the prior approval of a high authority. Once hired, new employees are held in a probationary status for their first ten shift assignments, during which time they are evaluated by the manager, who thereafter, based on his or her judgment, determines whether such employees will be retained. If a manager views a probationary employee's performance as unsatisfactory, the manager will terminate that employee. Also, managers have the authority, and indeed are expected, to issue verbal and written warnings to permanent employees when warranted and if these warnings do not result in improved performance or behavior, managers have the authority, without prior approval of higher au-

thority, to discipline or terminate the offending employee. Terminations effected by the managers are reviewed by the main office but not until after the fact. The managers make periodic evaluations of their employees which serve as a basis for the manager's decision to grant or withhold merit wage increases. These increases must conform to guidelines established by the main office but, except for extraordinary increases, prior approval from higher authority is not required. Other responsibilities vested in the unit managers include training and indoctrination of new employees, scheduling and maintaining manning levels and scheduling vacations. In general, the above-described authority of the restaurant managers is considerably greater than that reflected by the record in *Victoria Station, Inc.*, Case No. 20–RC–11151, in which a decision issued on March 12, 1973, and corresponds closely to the degree of day-to-day autonomy which the Board found in *Levitz Furniture, supra*, to be 'substantial'."

creases within guidelines established by the Company, grant vacations, decide the staffing of shifts, and train and evaluate probationary employees. Company officials visit each restaurant for a period of a few days approximately every six to eight weeks to check on the manager's compliance with Company procedures and standards.

These findings adequately distinguish the situation that existed in 1973. When viewed in conjunction with the presumption that single units are appropriate for bargaining, see *NLRB v. Lerner Stores Corp.*, 506 F.2d 706, 707 (9th Cir. 1974); *Gallenkamp Stores, Inc. v. NLRB*, 402 F.2d 525, 532 (9th Cir. 1968), we cannot conclude that the Board's unit determination is arbitrary, capricious, and not supported by substantial evidence. Only such a conclusion would enable us to overturn the Board's determination. 29 U.S.C. § 160(e); *NLRB v. Lerner Stores Corp., supra.* Our view is strengthened when the low degree of employee interchange among restaurants (a yearly transfer rate of approximately 8% among the Company's Bay Area restaurants) and the relatively wide geographic dispersion of these restaurants is considered. *See Haag Drug Co., Inc.*, 169 N.L.R.B. 877, 881, 883 (1968). These considerations also indicate that the Board's unit determination was not based on the extent of union organization. It, therefore, does not contravene § 9(c)(5) of the Act. 29 U.S.C. § 159(c)(5).

II.

We need not dwell at length on the Company's objections to the elections. The record does not show that the Company has made a prima facie showing of improprieties that would justify setting aside the elections. Neither the Union's agent nor attorney engaged in conduct that requires upsetting the elections. The Board's agent did not act improperly in conducting the election. His actions to which the Company takes exception were within the limits of his discretion and for the most part contributed to advancing the policy of insuring prompt and determinative election results.

While it is true that the Board's agent at times might have been more attentive to the election, these lapses caused no harm and provide no basis for setting the elections aside.

ORDER ENFORCED.