**UNION OIL COMPANY OF CALIFOR-NIA, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 78–2334.

United States Court of Appeals, Ninth Circuit.

Oct. 16, 1979.

Rehearing Denied Nov. 14, 1979.

Howard C. Hay, Paul, Hastings, Janofsky & Walker, Los Angeles, Cal., for petitioner.

Richard A. Cohen, NLRB, Washington, D. C., argued, for respondent; Elliott Moore, NLRB, Washington, D. C., on brief.

Before MERRILL and KENNEDY, Circuit Judges, and CLAIBORNE,* District Judge.

KENNEDY, Circuit Judge:

The Union Oil Company petitions us for review of a National Labor Relations Board order directing the company to bargain with an employee unit certified by the Board. The Board cross petitions for enforcement of the order. The issue is whether three of the company's computer operators should have been classified as confidential employees by the Board because of their access to restricted company information. We find substantial support for the Board's determination to deny confidential status to the employees, and we conclude the Board's order should be enforced.

In 1976 the Oil, Chemical, and Atomic Workers International Union (Oil Workers) filed a petition seeking to represent the seventeen clerical employees of the compa-

---

* Honorable Harry E. Claiborne, United States District Judge for the District of Nevada, sitting by designation.

ny's Wilmington refinery. Three employees were computer operators responsible for both entry and extraction of computer information. The data consist mostly of customer and personnel information, although some data regarding capital and operating expenses are also maintained. Personnel data include actuarial statistics, wage information, and employment history. The employment information is distributed on a limited basis and only five or six supervisorial personnel are authorized to obtain it. The three operators may not extract the information on their own. Some of the information has been supplied to the Oil Workers, either pursuant to contractual requirements or voluntarily by the company.

The three operators are supervised by one Marquardt, but virtually all requests for employee information are made by personnel supervisor Ward Stennet, through his personal secretary. The data are used by Stennet both in the resolution of grievances and in the negotiation of contracts.

The question before this court is whether the Board erred in finding the three computer operators are not confidential employees. On petition for enforcement, the Board's ruling will stand as long as it is not arbitrary, capricious or unsupported by substantial evidence. 29 U.S.C. § 160(e) (1976); *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 490, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *NLRB v. Fort Vancouver Plywood Co.,* 604 F.2d 596 (9th Cir. 1979); *Victoria Station, Inc. v. NLRB,* 586 F.2d 672, 675 (9th Cir. 1978).

The Board has long recognized that employees who have a confidential relationship to management should be excluded from the bargaining unit. *See, e. g., Ford Motor Co.,* 66 N.L.R.B. 1317–1322, 317, 1322 (1946); *The B. F. Goodrich Co.,* 115 N.L.R.B. 722, 724 (1956). *See also NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 283, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974). The rationale behind this rule is that employees should not be placed in a position which creates a potential conflict between the interests of the employer and the union. *See Westinghouse Electric Corp. v. NLRB,* 398 F.2d 669, 670 (6th Cir. 1968).

In *B. F. Goodrich, supra,* the Board defined confidential employees as those who "assist and act in a confidential capacity to persons who formulate, determine, *and* effectuate management policies in the field of labor relations." 115 N.L.R.B. at 724. Under this test the central inquiry is whether the employee is in a confidential work relationship with a specifically identifiable managerial employee responsible for labor policy. Because most employees have an arguably confidential relationship with management, and because an expansive application of the exclusionary rule would deprive many employees of the right to bargain collectively, the Board has narrowly construed the definition of confidential employee. *Id.; Westinghouse Electric Corp. v. NLRB, supra,* 398 F.2d at 670.

The company contends that the computer operators had a confidential relationship with Stennet. The record, however, does not support this argument. There was no showing that the computer operators ever dealt with Stennet; indeed, the closest contact that the employees had with Stennet was through his secretary, Ruth Schultz. Since the parties stipulated that Schultz was a confidential employee and that the computer operators perform duties previously done by Schultz, the company contends that this also demonstrates the existence of a confidential work relationship. We do not agree. The record shows that the duties taken over by the computer operators were purely clerical in nature.

More significant is the fact that the computer operators were under the supervision of Marquardt, who was responsible for computer operations, not labor relations. *See California Inspection Rating Bureau,* 215 N.L.R.B. 792 (1974), *enforced,* 591 F.2d 56 (9th Cir. 1979). Because there is substantial evidence that the computer operators acted as record custodians for persons who do not formulate or implement labor policy, we conclude that there is an adequate basis for the Board's ruling.

In a separate line of decisions, the Board has also accorded confidential status to

"those employees who, in the course of their duties, regularly have access to confidential information concerning anticipated changes which may result from collective bargaining negotiations." *Pullman Standard Division,* 214 N.L.R.B. 762, 762–63 (1974). The company contends that the computer operators come under the *Pullman Standard* definition of confidentiality because they have access to information that might be used in contract negotiations. This information, it is argued, includes data concerning the refinery's capital and expense budgets as well as individual personnel information. Critical to the Board's decision in *Pullman Standard,* however, was the fact that the employees there had access to the precise labor rates which the employer was willing to agree to in collective bargaining. Premature disclosure of managerial estimates of the results of future contract negotiations, the Board reasoned, would have unduly prejudiced management's bargaining position.

In the case before us, there was no showing that the capital budget indicated the precise labor rates the company would accept, or that it otherwise disclosed the company's bargaining position. The record only indicates that the computer operators have access to personnel or statistical information upon which the company's labor relations policy is based. The Board has consistently held that access to such information is insufficient to establish confidential status. *See John Sexton & Co.,* 224 N.L.R.B. 1341 (1976); *Pullman Standard,* 214 N.L.R.B. at 763. In this regard the Board's ruling is well within the discretion granted it to promulgate standards for effective implementation of the National Labor Relations Act in the industrial context. *See NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 283 & n.12, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974).

The computer operators have responsibilities similar to those of employees who have been found not to be confidential employees. *See, e. g., KOWB Radio,* 222 N.L.R.B. 530 (1976) (bookkeeper responsible for compiling personnel and financial records not a confidential employee); *California Inspection Rating Bureau,* 215 N.L.R.B. at 792 (accounting clerk who had access to confidential personnel information and who prepared budget estimates for personnel items not a confidential employee); *Santa Fe Trail Transportation Co.,* 119 N.L.R.B. 1302 (1958) (file clerk having care of general auditor's files that included correspondence relating to labor relations not a confidential employee). We conclude, therefore, that substantial evidence supports the Board's conclusion that the computer operators were not confidential employees under the *Pullman Standard* test.

Finally, the company argues that the *Pullman Standard* test is satisfied because the computer operators regularly perform the same duty of running new test programs as those persons classified as confidential employees in *C F & I Steel,* 196 N.L.R.B. 470 (1972). The record does not support this contention. Absent a showing of regular performance as required by *C F & I Steel,* this argument is without merit.

ORDER ENFORCED.