DECISION
Before the Court is an appeal by the Rhode Island Department of Corrections from a decision of the Rhode Island Labor Relations Board permitting the accretion of the positions of Junior Electronic Computer Programmer, Senior Electronic Computer Programmer, and Principal Systems Analyst (MIS Technological Employees) to the rank and file bargaining unit of the Rhode Island Brotherhood of Correctional Officers. Jurisdiction is pursuant to G.L. 1956 § 42-35-15 and § 28-7-29.
 FACTS/TRAVEL
The plaintiff, the Rhode Island Department of Corrections (DOC), is an employer as defined in the Rhode Island Labor Relations Act. See G.L. 1956 § 28-7-1, et seq. The defendant, the Rhode Island Labor Relations Board (Board), is a Rhode Island administrative agency. The defendant, the Rhode Island Brotherhood of Correctional Officers (RIBCO or Union), is an unincorporated labor organization which has been certified as the exclusive bargaining representative of certain employees of the Rhode Island Department of Corrections.
On July 6, 1996, RIBCO filed a Petition for Unit Clarification with the Board whereby it sought to accrete five positions — Information Aide, Junior Electronic Computer Programmer, Senior Electronic Computer Programmer, Principal System Analyst and Chief of Data Operations — to the bargaining unit certified by EE 2003. The DOC objected to the inclusion into the bargaining unit of any of the positions on the basis that the positions were confidential and therefore not eligible to bargain collectively.
On June 24, 1997, the Board made a preliminary determination that the position of Information Aide was already included in the bargaining unit and that the positions of Junior Electronic Computer Programmer, Senior Electronic Computer Programmer, and Principal System Analyst were appropriate for accretion into the bargaining unit.[1] On December 2, 1997, and February 12, 1998, formal hearings on the petition were conducted. After conclusion of the hearings, written briefs were filed by the RIBCO and the DOC. On December 18, 1998, the Board issued its decision and order accreting the positions of Junior Electronic Computer Programmer, Senior Electronic Computer Programmer, and Principal System Analyst to the bargaining unit.
On January 15, 1999, the DOC filed an appeal of the Board's decision and sought a stay of the Board's decision. On February 1, 1999, the Superior Court heard oral arguments on the plaintiff's motion for a stay. The issuance of a stay was found to be appropriate since issues concerning the security of the Adult Correctional Facility were implicated and, as such, the request for a stay was granted, Silverstein, J.
On appeal, the plaintiff claims that the Board's decision, which permitted the accretion of Junior Electronic Computer Programmer, Senior Electronic Computer Programmer, and Principal Systems Analyst into the RIB CO bargaining unit, is clearly erroneous, as these positions are confidential employees under the labor-nexus test. Alternatively, the plaintiff requests that this Court expand the labor-nexus test to include these positions since they are confidential employees based upon their access to all critical departmental information. Further, plaintiff contends these positions fail to meet the community of interest criteria necessary to justify accretion into the RIBCO bargaining unit. Additionally, the plaintiff asserts that the Board failed to consider the broad statutory authority of the Director of the Department of Corrections (Director) to maintain security, safety, and order. Finally, the plaintiff argues that the Board failed to address in its decision whether these positions qualify as guards under § 9 (b)(3) of the National Labor Relations Act so as to preclude the inclusion of these positions in a union which also represents non-guards.
 STANDARD OF REVIEW
The review of a decision of the commission by this Court is controlled by G.L. 1956 § 42-35-15 (g) which provides for review of a contested agency decision:
 "(g) The Court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The Court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of an agency in regard to the credibility of witnesses or the weight of the evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court "must uphold the agency's conclusions when they are supported by any legally competent evidence in the record." Rocha v. State PublicUtilities Comm., 694 A.2d 722, 725 (R.I. 1997) (citing RhodeIsland Public Telecommunications Authority v. Rhode Island LaborRelations Board, 650 A.2d 479, 485 (R.I. 1994)). This is true even in cases where the Court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dept. of EmploymentSecurity, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record."Milardo v. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody, 509 A.2d at 458. The Superior Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence. Rhode Island Public Telecommunications Authority, etal. v. Rhode Island Labor Relations Board, et al., 650 A.2d 479, 485 (R.I. 1994).
 CONFIDENTIAL EMPLOYEES
The plaintiff argues that the Board erred in finding that the MIS Technological Employees are not confidential employees who should be excluded from the collective bargaining process under the labor nexus test. Specifically, the plaintiff characterizes the MIS Technological Employees as confidential since every key official stores information of the Local Area Network and these employees assist the key labor relations individuals by providing that all confidential information is accessible and secure. As a result, the plaintiff maintains that MIS Technological Employees must be excluded from union membership in order to preserve the equality of bargaining power which currently exists between management and their employees.
Alternatively, the defendants assert that the MIS Technological Employees are not confidential employees. Specifically, the defendants contend that the employees in question do not act in a confidential capacity to persons who formulate, determine or effectuate management policies in the field of labor relations at the DOC. Furthermore, the defendants argue that there is no evidence that the employees, in the normal performance of their duties, regularly have access to confidential information concerning anticipated changes which may result from collective bargaining negotiations.
In Barrington School Committee v. Rhode Island LaborRelations Board, 608 A.2d 1126, 1136 (R.I. 1992), the Rhode Island Supreme Court found that confidential employees must be excluded from membership in a collective bargaining unit in order to preserve the integrity of the collective bargaining process. The Court stated that "[i]t would be unfair for an employee who is entrusted with advance knowledge of his or her employer's labor relations policies to be able to share this information with a union that serves as that employee's collective bargaining representative." Id. In Barrington School Committee, the Court adopted the National Labor Board's labor nexus test for determining whether or not an employee's position is confidential. Id. Under the test, two categories of employees are recognized as `confidential' and thereby excluded from the collective bargaining process. The first category of confidential employees includes those employees "who either assist and act in a confidential capacity to persons who formulate, determine, and effectuate management policies in the field of labor relations"Id. The second category consists of those employees who regularly have access to confidential information concerning anticipated changes which may result from collective bargaining negotiations.Id.
The Board's finding that the MIS Technological Employees were not confidential employees is supported by probative and substantial evidence on the whole record. The record is devoid of any evidence establishing that either Michelle Lanciaux or Kevin Major, the supervisors of the MIS Technological Employees, formulate, determine, or effectuate management policies in the field of labor relations. Mr. Major, specifically, testified that he did not play any role in the development of labor relations policy for the Department. (12/2/97 Tr. at 52). As such, the positions of the MIS Technological Employees fail to meet the first prong of the labor-nexus test.
"In order for an employee to be considered confidential, the employee at issue must have regular and considerable access to such confidential information as a result of their job duties."Barrington School Committee, 608 A.2d at 1137. "Casual access to labor-related information is not enough to disqualify an employee from belonging to a bargaining unit." Id. Furthermore, the burden of proving "confidential status" is on the party asserting it.Crest Mark Packing Co., 283 NLRB 999 (1987). At the hearings, testimony was presented concerning the principal job responsibilities of each position and the employees' access to the computer systems. The evidence presented clearly demonstrates that none of the employees in question access labor-related documents on a daily basis. (12/2/1997 Tr. at 28, 31, 35-36, 40). Further, although it was the plaintiff's contention that the MIS Technological Employees have access to all documents at the DOC, including those involving labor relations, there was no testimony at the hearings concerning the exact nature of the those labor relations documents. The fact that an employee has access to "personnel or statistical information upon which the company's labor relations policy is based" is insufficient to establish confidential status. See Union Oil Co. v. National LaborRelations Board, 607 F.2d 852, 854 (1979) (holding that access to statistical and personnel information by computer operators was insufficient to establish confidential status); see also PullmanStandard Division Inc., 214 N.L.R.B. 762 (1974). Accordingly, this Court finds that the Board's determination that the MIS Technological Employees in question are not confidential employees under the second prong of the labor-nexus test was not clearly erroneous and was supported by substantial evidence of record.
 EXPANSION OF THE LABOR NEXUS TEST
The plaintiff contends that the definition of "confidential employee" should be expanded to include MIS Technological Employees. Specifically, the plaintiff asserts that it is critical that management trust the Systems Administrators of the DOC computer systems. According to the plaintiff, the MIS Technological Employees are "trusted employees who are given weekend access, passwords or I.D.s of all employees or [who may] obtain information by calling the Principal Systems Analysts or their supervisors in order to keep the computer system, which is pivotal to operations up an running."
Pursuant to the limited scope of review permitted by G.L. 1956 § 42-35-15, this Court must review the entire record to determine whether there exists any legally competent evidence to support the Board's finding that a broader definition of the term "confidential, employee" is not warranted given the circumstances present in the instant matter. This Court "must uphold the agency's conclusions when they are supported by any legally competent evidence in the record." even if this Court might be inclined to view the evidence differently than the agency. SeeRocha 694 A.2d at 725; see also Berberian, 414 A.2d at 482.
In Barrington School Committee, our Supreme Court declined to "embrace the labor-nexus test as controlling in all future instances" and stated that "a broader definition of those employees considered to be confidential would be desirable in other circumstances." Barrington School Committee, 608 A.2d at 1137 (quoting N.L.R.B. v. Hendricks County Rural ElectricMembership Corp., 454 U.S. 170 (1981) (Powell, J., dissent)). In its decision, the Board stated that it may have been persuaded to find that the MIS Technological Employees were confidential employees if they "truly [had] regular and uninhabited access to every `byte of information', within the Department, with no wayfor the Department to protect itself from unauthorized access toinformation . . . [However, t]he Board was not persuaded that the employees in question have regular and uninhabited access to information that by its nature would make the employees `confidential.'" Decision at 9. In reaching that conclusion, the Board relied on the testimony of Peggy Charette, a Senior Computer Programmer, that she can neither access a list of passwords of DOC employees nor access other employees' pass worded files. Id. at 10. Furthermore, the testimony concerning the duties of Frank Pate, the other Senior Computer Programmer, demonstrated that his primary responsibilities do not involve accessing labor related documents but rather encompass upgrading PC hardware, taking inventory, and helping users with general functionality of the computer. (2/12/98 Tr. at 19). Furthermore, Mr. Major testified that Mr. Pate does not have access to the secure I.D.s and passwords and stated that he was uncertain as to whether Ken Kard, a Principal Systems Analyst, had access to secure I.D.s and passwords. (2/12/98 Tr. at 66).
Although the plaintiff asserts that it is critical that management trust employees of the MIS Unit, there was no evidence introduced that would suggest that the employees would be any less trustworthy or that the computer systems would be compromised if the employees were unionized. Furthermore, despite the plaintiff's contention that, if unionized, these employees could face pressure from union officials to help during negotiations or create the critical "choke point" during periods of unrest, the employees would still be bound by both the Department's Code of Ethics and Code of Conduct. Under both the Code of Conduct and the Code of Ethics, unauthorized access is prohibited, and the employees would subject themselves to possible termination if they disclosed `confidential' information to the union. Additionally, the employee would also be subject to the provision of G.L. 1956 § 11-52-1, et seq. for any unauthorized dissemination of the information. Accordingly, the Board's concluding that the circumstances in the present matter did not warrant the expansion of the term `confidential employee' under the labor-nexus test is supported by legally competent evidence.
 DETERMINATION OF THE BARGAINING UNIT
The plaintiff argues that the board erred in granting the union's petition for unit clarification. Specifically, plaintiff contends that there was no evidence demonstrating a community of interest between these positions and the correctional officers and other members of the rank and file unit. The defendants disagree with plaintiff's position, arguing that the proposed unit is appropriate for collective-bargaining purposes.
In R.I. Public Telecommunications Authority, the Rhode Island Supreme Court discussed the issue of determination of bargaining unit membership for collective-bargaining purposes. Id. at 486. In its decision, the court noted that in determining the membership of units for collective-bargaining purposes, it is the policy of the NLRB to group together "`only employees who have substantial mutual interest in wages, hours, and other conditions of employment.'" Id. (quoting Fifteenth Annual Report of the NLRB, 39 (1950)). According to the court, in determining the bargaining unit, "the board is not required to choose the most appropriate bargaining unit but only an appropriate bargaining unit." Id. The court adopted the community of interest doctrine, utilized by the NLRB, in order to decide if employees in a unit are "sufficiently concerned with the terms and conditions of employment so as to warrant their participation in the selection of a bargaining agent." Id.
In determining whether there exists a community of interest, the court in R.I. Public Telecommunications Authority adopted factors relied on by the NLRB. Those factors are:
 "1. Similarity in scale and manner of determining earnings,
 2. Similarity of employment benefits, hours of work, and other terms and conditions of employment,
 3. Similarity in the kind of work performed,
 4. Similarity in the qualifications, skills, and training of the employees,
 5. Frequency of contact or interchange among employees,
 6. Geographic proximity,
 7. Continuity or integration of production processes,
 8. Common supervision and determinations of labor relations policy,
 9. Relationship to the administrative organization of the employer,
 10. History of collective bargaining,
 11. Desires of the affected employees; and
 12. Extent of union organization." Id.
The Board had before it sufficient evidence to find that there existed a community of interest between the four positions in question and the other members of the union. The MIS Technological Employees and the other members of RIBCO work in the same complex of buildings and are subject to the same Code of Conduct as well as Code of Ethics. The MIS Technological Employees frequently have contact with other members of the RIBCO as part of their daily tasks. Furthermore, all members of RIBCO have the common purpose of "contribut[ing] to the public safety by providing custody, care, discipline, treatment and study of persons committed to state correctional institutions, as well as those individuals on probation or parole." See G.L. 1956 §42-56-1.
 THE DIRECTOR'S STATUTORY AUTHORITY
The plaintiff further argues that the Board erred as a matter of law by failing to consider the broad statutory authority and non-delegable authority of the Director of Corrections (Director) to maintain security, safety and order. The plaintiff alleges that by finding that there was no evidence that unionizing the positions would compromise the data contained on the computer system, the Board was engaging in a judgment call concerning the level of acceptable security risks that by statute and case law is specifically reserved for the Director. According to the plaintiff, it is imperative that system administrators, such as the MIS Technological Employees, remain aligned with management, rather than forcing the DOC to choose between abandoning the full utilization of the existing technology or risk compromising confidential information. Alternatively, the defendants argue that the Board did not engage in a "judgment call" since it reviewed all the evidence before it and noted the various tools available to the Director to prevent security breaches which the Director had not utilized. The defendants further contend that there was no evidence in the record that the accretion of the MIS Technological Employees "will or could cause a `failure' or `breach' of the computer system that would not be a criminal act." See Defendants' Brief at 11.
In its decision, the Board recognized that some of the information contained in the computer systems is critical to the functioning of the Parole Board, the State Police, the Attorney General, and the Courts but also noted that the evidence presented at the hearings failed to demonstrate that the data would be or could be compromised by the accretion of these positions to the bargaining unit.
The Director of the Department of Corrections is vested with broad statutory powers and responsibilities to ensure that the prison system functions in a safe and secure maimer. See G.L. 1956 § 42-56-10. However, G.L. 1956 § 28-7-12, entitled "Rights of employees," provides that "[e]mployees shall have the right of self organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection free from interference, restraint, or coercion from any source." The mere fact that the MIS Technological Employees may be unionized alone does not undermine the power of the Director. In Vose v. Rhode Island Brotherhood of CorrectionalOfficers, 587 A.2d 913 (R.I. 1991), our Supreme Court held that the provisions of a collective bargaining agreement could not limit or restrict the director's statutory authority under G.L. 1956 § 42-56-10 to provide for adequate security at the Adult Correctional Institution. Pursuant to Vose, the Director's authority would not be compromised if the positions were unionized and he would still be free to take all necessary steps to insure the safety of the institution.
Additionally, there is no probative evidence of record that the unionization of these positions would affect the overall functionality of the system, would cause security breaches, or would result in management losing confidence in the existing computer network. The plaintiff's contention that the Department would be forced to choose between abandoning the full utilization of the existing technology or risk compromising confidential information is not supported by the evidence of record. Whether union or nonunion, the MIS Technological Employees are bound by both the Code of Conduct and the Code of Ethics, and there is no evidence that demonstrates that the employees, if unionized, would undermine management's confidence in them by violating the provisions of those codes.
 SECTION 9 (b)(3) OF THE NATIONAL LABOR RELATIONS ACT
The plaintiff further argues that the Board erred in failing to address whether the MIS Technological Employees are guards under section 9 (b)(3) of the National Labor Relations Act (NLRA). Section 9 (b)(3) of the National Labor Relations act provides that "[t]he Board shall not decide that any unit is appropriate for such purpose if it includes, together with other employees, any individual employed as a guard to enforce against employees and other persons rules to protect property of the employer or to protect the safety of persons on the employer's premises. . . ." 29 U.S.C.S. § 159. Specifically, the plaintiff asserts that the MIS Technological Employees are guards since they have the responsibility of protecting the computer property and rules of the Department by running investigations and acting as overall System Administrators. Accordingly, the plaintiffs contend that since the MIS Technological Employees are guards, they are not permitted in a union with non-guards under section 9 (b)(3) of the National Labor Relations Act.
Alternatively, the defendants argue that the Board did not make findings as to whether the MIS Employees were guards since the prohibition against guards in the same unit as non-guards is statutorily limited to cases arising under federal law. According to the defendants, Rhode Island law permits state employees, except those classified as casual, seasonal, managerial, supervisory, or confidential, to engage in collective bargaining and there is no statutory limit which precludes guards from collectively bargaining with non-guards.
The Rhode Island State Labor Relations Board is not governed by section 9 (b)(3) of the National Labor Relations Act. Under the NLRB, any State or political subdivision thereof is excluded from the definition of employer. See 29 U.S.C.A. 152 (b). As such, public employees of the State or of a political subdivision of the State are not governed by the federal labor laws. SeeN.A.A.C.P., Detroit Branch v. Detroit Police OfficersAssociation, 821 F.2d 328, 331-332 (6th Cir. 1987). Accordingly, the law of Rhode Island would govern and define the "permissible contours" of the relationship between guards and non-guards in the collective bargaining process. See Id.
Rhode Island General Laws 1956 § 28-7-15, entitled "Determination of bargaining unit," provides that
 "[t]he board shall decide in each case whether, in order to insure to employees the full benefit of their right to self organization, to collective bargaining, and otherwise to effectuate the policies of this chapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or any other unit; provided, however, that in any case where the majority of employees of a particular craft shall so decide, the board shall designate the craft as a unit appropriate for the purpose of collective bargaining."
Unlike the federal law governing the determination of the bargaining unit, the Rhode Island counterpart provision does not expressly prohibit guards from being accreted into the same union as non-guards. Accordingly, this Court finds that the Board did not err in failing to address whether the MIS Technological Employees were guards under section 9 (b)(3) of the NLRA.
After review of the entire record, this Court finds that the decision of the Rhode Island State Labor Relations Board is supported by the reliable, probative and substantial evidence on the whole record and is not affected by error of law. Substantial rights of the Department of Corrections have not been prejudiced. Accordingly, the decision of the Rhode Island State Labor Relations Board is affirmed.
Counsel shall submit the appropriate judgment for entry.
[1] Prior to any formal hearings, the Union dropped its petition for the accretion of Chief of Data Operations.