NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUN 17 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD,<br><br>Petitioner,<br><br>v.<br><br>RADNET MANAGEMENT, INC., DBA San Fernando Valley Interventional Radiology and Imaging Center; RADNET MANAGEMENT, INC., DBA San Fernando Valley Advanced Imaging Center,<br><br>Respondents. | No. 19-71261<br><br>NLRB Nos. 31-CA-222587<br>31-CA-225390<br><br>MEMORANDUM* |
| RADNET MANAGEMENT, INC., DBA San Fernando Valley Interventional Radiology and Imaging Center; RADNET MANAGEMENT, INC., DBA San Fernando Valley Advanced Imaging Center,<br><br>Petitioners,<br><br>v.<br><br>NATIONAL LABOR RELATIONS BOARD,<br><br>Respondent. | No. 19-71447<br><br>NLRB Nos. 31-CA-222587<br>31-CA-225390 |

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

On Application for Enforcement and
Cross-Petition for Review of an Order of the
National Labor Relations Board

Submitted June 4, 2020[**]
Seattle, Washington

Before: GOULD, BEA, and MURGUIA, Circuit Judges.

RadNet Management, Inc. ("RadNet") administers diagnostic imaging services at various California locations, including San Fernando Valley Interventional Radiology and Imaging Center ("SFV Interventional") and San Fernando Valley Advanced Imaging Center ("SFV Advanced"). After the National Union of Healthcare Workers ("the Union") notified RadNet that the Union sought recognition as the exclusive-bargaining representative of "technical" employees at these two locations, the National Labor Relations Board ("the Board") supervised elections. When the Union prevailed in the elections, RadNet filed several objections to the elections with the Board. The Board's Regional Director overruled each of RadNet's objections—most without a hearing—and certified the Union as the exclusive collective-bargaining representative of technical employees at both RadNet locations. On appeal, the Board denied RadNet's Requests for Review of the Regional Director's certifications,

_____

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

concluding RadNet raised "no substantial issues warranting review."

RadNet then refused to bargain with the Union, which led the Union to commence unfair-labor-practices proceedings before the Board. RadNet continued to argue that alleged defects in the election processes should absolve RadNet from any duty to bargain with the Union. A three-member panel of the Board issued a Decision and Order ("Decision") that declined to reconsider whether it was proper to certify the Union at both locations, and concluded that RadNet's refusal to bargain with the Union is an unfair labor practice affecting commerce in violation of Sections 8(a)(5) and (1) of the National Labor Relations Act ("NLRA"). The Board accordingly ordered RadNet to bargain with the Union. When RadNet continued its refusal to bargain with the Union, the Board filed an application with this Court for enforcement of its Decision. RadNet cross-petitioned for review of the Board's Decision. The Board's application and RadNet's cross-petition were consolidated on appeal.

The Board "has the primary responsibility for developing and applying national labor policy," and its rules and interpretations thereof are accorded "considerable deference." *NLRB v. Curtin Matheson Scientific, Inc.*, 494 U.S. 775, 786 (1990). Board decisions are upheld unless factual findings are unsupported by substantial evidence or if the agency incorrectly applies the law. *NLRB v. Calkins*, 187 F.3d 1080, 1085 (9th Cir. 1999). We defer to the Board's application of its

3

own rules and regulations unless the rules themselves are inconsistent with the NLRA or the Board's "explication is . . . inadequate, irrational or arbitrary." *Sever v. NLRB*, 231 F.3d 1156, 1164 (9th Cir. 2000) (quoting *Allentown Mack Sales & Serv. Inc. v. NLRB*, 522 U.S. 359, 364 (1998)).  We have jurisdiction under 29 U.S.C. § 160(e), and we grant the Board's application for enforcement of its Decision and deny RadNet's cross-petition.

1.  RadNet waived its objection that the Board erred by declining to vacate the election results because voters were not told of a purported affiliation between the Union and another union because RadNet stipulated to the ballots' form in advance of the elections.  *See NLRB v. Sonoma Vineyards, Inc.*, 727 F.2d 860, 865 (9th Cir. 1984) ("When a union and an employer enter into a stipulation of this sort, the Board is bound by the stipulation's terms unless the stipulation violates applicable statutes or settled Board policy." (citing *NLRB v. Mercy Hosps. of Sacramento, Inc.*, 589 F.2d 968, 972 (9th Cir. 1978))).  RadNet also waived any objection to the inclusion of statutory guards in the bargaining unit by failing to challenge the purported guards as voters before or during the elections.  *See NLRB v. A.J. Tower Co.*, 329 U.S. 324, 331 (1946).

2.  The Board did not err in declining to vacate the election results at the two locations due to a purportedly flawed "challenged ballot" procedure.  Although the Board's agent who supervised the elections failed to explain to some voters that

4

votes would not be kept secret in unusual circumstances, that oversight does not call into question the entire elections' fairness and validity, which is required to set aside an election. *See Bell Foundry Co. v. NLRB*, 827 F.2d 1340, 1346 (9th Cir. 1987).

3. The Board also did not err in declining to vacate the SFV Interventional election because its agent did not establish a "no-electioneering zone" at the polling place and allegedly failed to police electioneering. Board agents supervising elections are not required to designate an official no-electioneering zone around polling places. *See NLRB v. Aaron Bros. Corp.*, 563 F.2d 409, 412 (9th Cir. 1977) ("'The establishment of an area in which electioneering is not permitted, must in the first instance be left to the informed judgment of the Regional Director and his agents conducting the election' on a case to case basis." (quoting *Marvil Int'l Sec. Serv.*, 173 N.L.R.B. 1260, 1260 (1968)); *see also* Nat'l Labor Relations Board, *Casehandling Manual (Part Two), Representation Proceedings* § 11318 (Jan. 2017). And although RadNet objected—after the election—that the Board agent supervising the SFV Interventional election should have undertaken greater efforts to police electioneering, RadNet never alleged the Board agent failed to prevent any actual unlawful electioneering. Absent any specific allegations of unlawful electioneering taking place, there is "no basis for setting the election[] aside." *Victoria Station, Inc. v. NLRB*, 586 F.2d 672, 675 (9th

5

Cir. 1978) ("While it is true that the Board's agent at times might have been more attentive to the election, these lapses caused no harm and provide no basis for setting the elections aside.").

4. The Board further did not err in declining to vacate the SFV Interventional election result for possible list-keeping by the Union's election observer. As the Regional Director rightly noted in overruling this objection during the representation proceedings, even accepting RadNet's implausible contention that the Union observer was keeping a secret list of voting employees, RadNet proffered no evidence that any voting employee saw the Union observer highlighting her study guide or "knew their names were being recorded." *Chrill Care, Inc.*, 340 N.L.R.B. 1016, 1016 (2003).

5. The Board did not err in declining to vacate the SFV Advanced election's results on account of alleged voter harassment. Whether voter harassment warrants setting aside an election turns on a multi-factored objective test of the nature, severity, and timing of the harassment. *See Taylor Wharton Div. Harsco Corp.* ("*Taylor Wharton*"), 336 N.L.R.B. 157, 158 (2001) (listing nine factors relevant to determining if a Union's conduct "has the tendency to interfere with employees' freedom of choice"). Here, RadNet's sole alleged instance of harassment was a pro-Union RadNet employee "cornering" another employee and urging the employee to sign a Union petition. As the Regional Director reasonably

6

concluded, however, this one instance of harassment does not warrant setting aside an election under *Taylor Wharton*.

6. The Board again did not err in declining to vacate the elections based on allegations that the Union or agent of the Union filed false police reports. First, the Hearing Officer did not err by refusing to enforce certain RadNet subpoenas and then closing the evidentiary record without waiting for responses to the subpoenas. Those subpoenas, as the Hearing Officer detailed, were mere "fishing expeditions with no basis of belief or knowledge that they would provide any probative information." RadNet also fails to explain why the Hearing Officer should have kept the record open when, even assuming that the subpoenas revealed that the Union and/or its purportedly affiliated union filed the allegedly false police reports, RadNet failed to introduce any evidence that employees at the relevant locations knew about these false police reports. *See Lockheed Martin Skunk Works*, 331 N.L.R.B. 852, 854 (2000) (explaining that conduct allegedly interfering with pre-election conditions must be known by employees in the voting unit to warrant setting aside an election). In fact, the Regional Director noted his skepticism that allegedly false police reports filed against employees of other RadNet locations could create an atmosphere of fear at the RadNet locations where elections were held. At the hearing, rather than introduce employee testimony demonstrating such an atmosphere of fear to buttress the need to execute the outstanding subpoenas,

7

RadNet chose not to introduce any evidence.

7. Finally, it was not arbitrary and capricious for the Board to decline to reconsider RadNet's objections to the elections in the unfair-labor-practice proceedings after the Board rejected those objections during the prior representation proceedings. The Board long ago promulgated a regulation, upheld by this Court, that "preclude[s] relitigating any [representation-proceeding] issues in any related subsequent labor practice proceeding," which relitigation bar this Court has upheld. 29 C.F.R. § 102.67(g); *see also NLRB v. W.S. Hatch Co.*, 474 F.2d 558, 562–63 (9th Cir. 1973). Contrary to RadNet's arguments on appeal, there is nothing inherently inconsistent with the Board having a regulation that generally prohibits parties from relitigating representation issues in subsequent unfair-labor-practice proceedings while reserving some discretion not to apply the relitigation bar in special circumstances.

**APPLICATION GRANTED**.